488 A.2d 307

**COMMONWEALTH of Pennsylvania**

**v.**

**Joseph LAHOUD, Appellant.**

Superior Court of Pennsylvania.

Submitted April 30, 1984.

Filed Feb. 1, 1985.

Petition for Allowance of Appeal Denied Aug. 7, 1985.

60

Richard J. Jacobs, Bethlehem, for appellant.

Christopher T. Spadoni, Assistant District Attorney, Bethlehem, for Commonwealth, appellee.

Before SPAETH, President Judge, and WIEAND and CIRILLO, JJ.

WIEAND, Judge:

Does a trial court abuse its discretion when it refuses a defense request to exercise extraordinary steps for obtaining the presence at trial of a paid police informant who has been accepted into the federal witness protection program? We hold that there was no abuse of discretion where, as here, the defendant failed to show that the witness had information favorable to the defense.

During the summer of 1981, federal and state law enforcement agencies launched an extensive undercover investigation into an international drug trafficking operation believed to be working out of a pizza parlor located in an Easton shopping center. As part of the operation, undercover agents set up a "Game Room" next door to the pizza parlor. This "Game Room" was rented and operated by Ted Riviello, a paid police informant. Riviello and undercover narcotics agents used the "Game Room" to hold themselves out as drug dealers. In this manner they attempted to infiltrate the drug ring believed to be operating next door. Joseph Lahoud, who was not a suspect and who had previously been unknown to the police, entered the "Game Room" on November 17, 1981 and offered to sell both hashish and heroin to Riviello and his "partner," Wallace E. Mignault, an undercover agent of the Federal Drug Enforcement Agency. Mignault went with appellant to appellant's home to retrieve "samples," after which they returned to the "Game Room" with two "bricks" of hashish. Riviello broke off a piece from one of the bricks and at a later time turned it over to the proper authorities. Appellant again met with Riviello and other undercover officers on the following day, and also on November 24, 1981 and December 2, 1981, to discuss arrangements and prices for the sale of hashish and heroin. Appellant was arrested on January 15, 1982 after the drug ring operating from the pizza parlor had been broken. When Lahoud was arrested, he was found to be carrying 26 grams of hashish. He entered a plea of guilty to the possession of this hashish. However, he denied guilt and was tried on charges arising

out of his prior contacts with drug agents. He defended these charges on grounds that criminality, if any, had been the product of duress and/or entrapment. A jury found Lahoud guilty of possession of hashish and possession with intent to deliver. He was also found guilty of solicitation to commit a crime and of delivering hashish. He was acquitted on charges of attempting to sell heroin.

■ Post-verdict motions were denied, Lahoud was sentenced to a term of probation, and this appeal followed. Although Lahoud's appeal was filed after the judgment of sentence had been imposed, the notice of appeal erroneously stated that the appeal was being taken from the order dismissing post-verdict motions. See: Pa.R.A.P. 301(c). Because the appeal is otherwise proper, we will treat this defect as harmless and proceed to consider the merits as if the notice of appeal had correctly referred to the judgment of sentence. See: Pa.R.A.P. 105(a).

Prior to trial, appellant's counsel attempted to interview Ted Riviello, only to learn that Riviello had been sentenced on unrelated state charges and had been remanded to federal custody to serve his sentence under the federal government's witness protection program. Riviello's whereabouts were known only to federal authorities. Defense counsel learned also that the Commonwealth did not intend to call Riviello as a prosecution witness. Therefore, counsel obtained a writ of habeas corpus ad testificandum directing the United States Marshall's Office to produce Riviello for trial on July 12, 1982. The Marshall refused to comply because, he said, the witness was beyond the compulsory process of the state court. On June 15, 1982, appellant's counsel requested the trial court to issue a rule to show cause why Riviello should not be produced at the trial to commence on July 12. At a hearing on June 30, an inspector employed by the United States Marshall's Office testified that Riviello was a federal prisoner and, as such, was beyond the jurisdiction of the court and would not be produced in response to compulsory process. The inspector testified that the federal government would agree to pro-

duce Riviello if, but only if, the costs of producing and safeguarding the witness were paid in advance to the federal government. These arrangements, which included elaborate security precautions, the inspector refused to describe. However, he said that the cost of an appearance for one day would be $3,602.68, and the cost of a two day appearance would be $5,101.32. The court estimated that the cost of producing Riviello as a witness at trial could rise as high as $10,000 and refused to direct the County of Northampton to advance funds to procure the presence of the witness.

 "It is clear that under both our state and federal constitutions, a criminal defendant has a right of compulsory process to obtain witnesses in his favor. Pa. Const. art. I § 9. *See Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)." *Commonwealth v. Allen,* 501 Pa. 525, 531, 462 A.2d 624, 627 (1983). See: *Commonwealth v. West,* 321 Pa.Super. 329, 330, 468 A.2d 503, 504 (1983). "The right to compulsory process encompasses the right to meet the prosecution's case with the aid of witnesses, and the right to elicit the aid of the Commonwealth in securing those witnesses at trial, both of which are fundamental to a fair trial. *This constitutional right, though fundamental, is not, however, absolute."* *Commonwealth v. Jackson,* 457 Pa. 237, 243, 324 A.2d 350, 354–355 (1974) (emphasis added). See also: *Commonwealth v. Allen, supra; Commonwealth v. West, supra.* Accord: *Ross v. Estelle,* 694 F.2d 1008, 1010 (5th Cir.1983); *Blaikie v. Callahan,* 691 F.2d 64, 66–67 (1st Cir.1982); *State v. McKnight,* 191 Conn. 564, ——, 469 A.2d 397, 406 (1983); *Ashley v. State,* 433 So.2d 1263, 1269 (Fla.Dist.Ct.App.1983); *Eubank v. State,* Ind., 456 N.E.2d 1012, 1014 (1983); *State v. Smith,* 639 S.W.2d 677, 680 (Tenn.Ct.App.1982); *Weaver v. State,* 657 S.W.2d 148, 150 (Tex.Crim.App.1983). The constitutional right of compulsory process is not violated merely because a witness in a criminal case leaves the jurisdiction or is otherwise unavailable. See: *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) (witnesses deported by government); *Commonwealth v.*

*Allen, supra* (invocation by witness of privilege against self-incrimination); *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975) (invocation by witness of privilege against self-incrimination upon advisement by prosecution); *Commonwealth v. Kent*, 355 Pa. 146, 49 A.2d 388 (1946) (compelled attendance excused by witness' advanced stage of pregnancy). The Constitution does not require that a defendant be given the right to secure the attendance of witnesses which he has no right to use. *Commonwealth v. Jackson, supra*, 457 Pa. at 243, 324 A.2d at 350, citing *Washington v. Texas, supra*. See: *Commonwealth v. Coffey*, 230 Pa.Super. 49, 52, 331 A.2d 829, 831 (1974). The constitutional right to compulsory process does not grant to a defendant "the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor.*'" *United States v. Valenzuela-Bernal, supra* 458 U.S. at 867, 102 S.Ct. at 3446, 73 L.Ed.2d at 1202 (emphasis in original), quoting U.S. Const. amend. VI. See: Pa. Const. art. I, § 9; *Commonwealth v. Coffey, supra* 230 Pa.Super. at 52, 331 A.2d at 831.

The law both in Pennsylvania and most other jurisdictions, therefore, is that "[t]he trial court has discretion on motions to secure witnesses." *Commonwealth v. Sullivan*, 484 Pa. 130, 135, 398 A.2d 978, 980 (1979). See: *Commonwealth v. Scott*, 469 Pa. 258, 264, 365 A.2d 140, 142–143 (1976); *Commonwealth v. Kent, supra* 355 Pa. at 152, 49 A.2d at 391; *Commonwealth v. Stanton*, 294 Pa.Super. 516, 525–526 n. 10, 440 A.2d 585, 590 n. 10 (1982). Accord: *United States v. $64,000 in United States Currency*, 722 F.2d 239, 246 (5th Cir.1984) (trial court has discretion with respect to issuance of writ of habeas corpus ad testificandum); *United States v. Leon*, 679 F.2d 534, 539 (5th Cir.1982) (same); *Maurer v. Pitchess*, 530 F.Supp. 77, 80 (C.D.Cal.1981) (same); *Bolender v. State*, 422 So.2d 833, 835 (Fla.1982), *cert. denied*, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983) (same); *Eubank v. State, supra*, 456 N.E.2d at 1014 (same); *State v. Hines*, 645 S.W.2d 88, 90

(Mo.Ct.App.1982); *Goodson v. State,* 564 P.2d 260, 262 (Okla.Crim.App.), *cert. denied,* 434 U.S. 863, 98 S.Ct. 193, 54 L.Ed.2d 137 (1977) (same); *State ex rel. Amek Bin Rilla v. Circuit Court for Dodge County,* 76 Wis.2d 429, 432–435, 251 N.W.2d 476, 479–480 (1977) (same).

The witness in the instant case was a paid police informant. He was also a witness which the Commonwealth had intended to use in establishing appellant's guilt. Although he clearly was in possession of information relevant to the issue of appellant's guilt, the record reveals no basis for believing that his testimony would have been favorable to the defense. Appellant's trial counsel propounded questions which she would have liked to ask Riviello, but there is no basis for believing that the answers of the witness would have been favorable to the defense. The Commonwealth had decided to forego the presence of the witness. Defense counsel, if the witness had been present under the circumstances, would not have been entitled to call the witness as of cross-examination. If he were called as a defense witness, the defense would be required to vouch for his veracity. When viewed in this light, the record fails to demonstrate that Riviello was material to the defense or that he had information favorable to appellant.

■ Implicit in the requirement of materiality is a concern that the absent witness have information which might have affected the outcome of the trial. Thus, the Supreme Court in *United States v. Valenzuela-Bernal, supra,* quoting from *United States v. Agurs,* 427 U.S. 97, 112–113, 96 S.Ct. 2392, 2401–2402, 49 L.Ed.2d 342, 354–355 (1976), explained:

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. . . . This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively mi-

nor importance might be sufficient to create a reasonable doubt."

*Id.* at 868, 102 S.Ct. at 3447, 73 L.Ed.2d at 1203.

■ Appellant was not relieved of the burden of showing that the missing witness would have given favorable testimony merely because the defense did not have prior access to the witness. A contrary contention was rejected by the Supreme Court in *United States v. Valenzuela-Bernal, supra,* where it said:

> In such circumstances it is of course not possible to make any avowal of *how* a witness may testify. But the events to which a witness might testify, and the relevance of those events to the crime charged, may well demonstrate either the presence or absence of the required materiality.
>
> In addition, it should be remembered that respondent was present throughout the commission of this crime. No one knows better than he what the [missing] witnesses actually said to him, or in his presence, that might bear upon whether he knew that Romero-Morales was an illegal alien .... We thus conclude that the respondent can establish no Sixth Amendment violation without making some plausible explanation of the assistance he would have received from the testimony of the [missing] witnesses.

*Id.* at 871, 102 S.Ct. at 3448–3449, 73 L.Ed.2d at 1205 (footnote omitted). Compare: *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (prejudicial error to permit government to withhold identity of informant who was sole participant, other than the accused, in the transaction charged).

■ Riviello was in federal custody and, therefore, not subject to the trial court's compulsory process. He could not be produced by subpoena or by writ of habeas corpus ad testificandum. *Special Prosecutor of New York v. United States Attorney for the Southern District of New York,* 375 F.Supp. 797 (S.D.N.Y.1974) (state court cannot issue

compulsory process to secure the presence for testimonial purposes of witness in federal "custody" under witness protection program). See: *Ponzi v. Fessenden*, 258 U.S. 254, 260–262, 42 S.Ct. 309, 310–311, 66 L.Ed.2d 607, 611–612 (1922); *Tarble's Case*, 80 U.S. (13 Wall.) 397, 406–407, 20 L.Ed. 597, 600–601 (1872); *Ableman v. Booth*, 62 U.S. (21 How.) 506, 523–524, 16 L.Ed. 169, 175–176 (1859); *Commonwealth v. Swenor*, 3 Mass.App. 65, 67, 323 N.E.2d 742, 744 (1975). Riviello could have been made available to the defense only by extraordinary arrangements made and carried out at substantial, public expense. In the absence of a record showing that the witness had information favorable to the defense, we are unable to say that the trial court abused its discretion in refusing appellant's request to order the production of Riviello for questioning at trial by the defendant.

■ Because the witness was not present, appellant requested the court to give a "missing witness" instruction which would have permitted the jury to infer, from the failure of the Commonwealth to call him as a witness, that Riviello's testimony would have been unfavorable to the Commonwealth. The court properly refused such an instruction. In the first place, the witness was not subject to the Commonwealth's power to subpoena witnesses or otherwise control his appearance. See: *Commonwealth v. Newmiller*, 487 Pa. 410, 419–420, 409 A.2d 834, 839 (1979) (plurality opinion); *Commonwealth v. Bird*, 240 Pa.Super. 587, 591–592, 361 A.2d 737, 739 (1976); *Commonwealth v. Trignani*, 185 Pa.Super. 332, 340, 138 A.2d 215, 219, *aff'd*, 393 Pa. 140, 142 A.2d 160 (1958). Accord: *Bulman v. Myers*, 321 Pa.Super. 261, 266, 467 A.2d 1353, 1356 (1983). Secondly, the Commonwealth had offered a reasonable explanation for Riviello's absence. See: *Commonwealth v. March*, 308 Pa.Super. 343, 454 A.2d 567 (1982); *Commonwealth v. Paull*, 250 Pa.Super. 416, 378 A.2d 1006 (1977);

*Commonwealth v. Gibson,* 245 Pa.Super. 103, 369 A.2d 314 (1976).[1]

Judgment of sentence affirmed.

SPAETH, President Judge, files a dissenting opinion.

SPAETH, President Judge, dissenting:

In *Commonwealth v. Terry,* 258 Pa.Super. 540, 393 A.2d 490 (1978), we held that Article 1, Section 9, of the Pennsylvania Constitution was violated where a trial court refused to produce a witness who was in federal custody. We stated that "the lower court wrongfully denied appellant the availability of a known eyewitness as well as the possibility of an adequate opportunity to present his version of the incident complained of to the jury", and that "[t]he lower court usurped appellant's prerogative in making the value judgment that [the witness's] testimony would be cumulative at best and have little, if any, probative value." *Id.,* 258 Pa.Superior Ct. at 546, 393 A.2d at 493. Here, appellant's position was that the absent witness would substantiate his defenses of duress and entrapment. Contrary to the majority's statement that "the record reveals no basis for believing that [the absent witness's] testimony would have been favorable to the defense", Majority op. at 311, most of appellant's testimony refers to the various acts of duress and entrapment alleged to have been perpetrated by the absent witness.

I also cannot agree with the majority's conclusion that appellant had no right under the Sixth Amendment to have the witness present. In *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), the Supreme Court held only that an appellant "can establish no Sixth Amendment violation without making some plausible explanation of the assistance he would have received from the testimony of the [absent] witness." *Id.* at

---

1. We have examined appellant's final argument that the Commonwealth failed to prove a full and complete chain of custody for the hashish obtained from appellant. There is no merit in this argument. The issue was adequately reviewed and discussed in the opinion of the trial court.

871, 102 S.Ct. at 3448 (footnote omitted). Here, appellant claimed that the absent witness had both coerced and entrapped him. This evidence, if it had been presented, would have assisted appellant's defense. "Just as the accused has a right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. The right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

I therefore conclude that the trial court's refusal to take admittedly available steps to procure the attendance of a material witness violated appellant's rights under the Federal and Pennsylvania Constitutions.

The judgment of sentence should be vacated and the case remanded for a new trial at which the witness should be produced.