581 A.2d 655

**COMMONWEALTH of Pennsylvania**

v.

**Danny McKENZIE, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 12, 1990.

Filed Oct. 24, 1990.

Norris E. Gelman, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, POPOVICH and MONTGOMERY, JJ.

WIEAND, Judge:

Danny McKenzie was tried by jury and was found guilty of three counts of aggravated assault and one count of possessing an instrument of crime as a result of his spraying shots from an Uzi automatic rifle around a Philadelphia street on the evening of July 29, 1988. Post-trial motions were denied, and McKenzie was given a sentence of imprisonment for aggravated assault and a period of probation for possession of an instrument of crime. On direct appeal, his principal argument is that the trial court erred when, over objection, it quashed a defense subpoena for Robin Watkins, Jr., and thereby deprived him of testimony from an eyewitness present at the time of the shooting.

At or about 9:45 p.m. on July 29, 1988, a gray, Nissan T-top sports car, being driven by appellant, pulled up in front of the Coulston residence at Williams and Weaver Streets in Philadelphia. Seated in the front passenger's seat was appellant's girlfriend, Michelle Miller. In the back seat, engaged in argument, were June Coulston and her boyfriend, Edsel "Butch" Conner. When the car stopped and June, crying, stepped out, her brother, Troy, approached the car and asked Butch what had happened. While Troy was standing in the open, passenger doorway, appellant suddenly drove away, with Troy Coulston hanging onto the vehicle. After Troy was able to pull himself into the vehicle, he fought with appellant in an effort to stop the car. The vehicle struck a parked car and turned into Upsal Street before the vehicle came to a stop. As Troy Coulston walked away from the car, he heard Michelle shout, "He got a gun, he got a gun." Troy then ran back to his home.

As he fled, he saw his friend, Craig Moore, in a white Cadillac. Moore had intended to follow the Nissan, but when he saw Troy returning, he stopped the Cadillac in front of the Coulston residence. When appellant approached with the Uzi, according to Commonwealth evidence, Moore and Coulston ran away in a hail of gunfire. Neither of the running young men was hit; however, Tina McEachin, a child seated in the back seat of her mother's car, was struck in the back by a bullet which had been fired from the Uzi and which had passed through the rear seat of the car. In all, more than twenty rapid-fire shots had been fired.

Appellant denied that he had done the shooting. His defense was that he, Butch and Michelle had been at Fayette and Sharpnack Streets when they heard gunshots from the vicinity of Weaver Street. The defense had also caused a subpoena to be issued for Robin Watkins, an alleged fifteen year old eyewitness to the shooting. Watkins failed to appear in response to the subpoena, and a bench warrant was issued for his arrest. Defense counsel

made an offer of proof, based on a statement obtained from the witness by an investigator, as follows:

What I believe the witness will testify to is that he was on the northwest corner of Weaver and Williams Street at the time of the incident; that he saw, after an argument ensued with the gray Nissan, saw a person get into a white Cadillac parked on Williams Street, make a U-turn, follow the gray Nissan down onto Upsal Street. He would also testify that he saw the Nissan crash into a car on the side of the road on Williams Street, the gray Nissan and that the white Cadillac then made a U-turn on Williams Street, followed that car down along Upsal Street; a few minutes later, the white Cadillac returned, pulled directly in front of 1400 Weaver Street. The operator got out of the car, went to the trunk of the vehicle, opened the trunk, pulled out something, moved to the side of the car and began firing.

Subsequently, the witness's father appeared and objected to his son's being forced to testify. The trial judge questioned the witness, heard testimony that was contrary to portions of the offer of proof, and quashed the subpoena over defense objection. Appellant contends that this was error. We agree.

"It is clear that under both our state and federal constitutions, a criminal defendant has a right of compulsory process to obtain witnesses in his favor." *Commonwealth v. Lahoud*, 339 Pa.Super. 59, 64, 488 A.2d 307, 310 (1985) (*allocatur denied*), quoting *Commonwealth v. Allen*, 501 Pa. 525, 531, 462 A.2d 624, 627 (1983). "The right to compulsory process encompasses the right to meet the prosecution's case with the aid of witnesses, and the right to elicit the aid of the Commonwealth in securing those witnesses at trial, both of which are fundamental to a fair trial." *Commonwealth v. Jackson*, 457 Pa. 237, 243, 324 A.2d 350, 354–355 (1974); *Commonwealth v. Lahoud, supra.* "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to

establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967). "[The] constitutional right, though fundamental, is not, however, absolute." *Commonwealth v. Jackson, supra* 457 Pa. at 243, 324 A.2d at 355. In order to compel the attendance of a witness at trial, it must be shown that the information possessed by the witness is material, i.e., capable of affecting the outcome of the trial, and that it is favorable to the defense. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

The record in the instant case suggests that Watkins had material information. The statement given to the defendant's investigator was to the effect that Watkins had observed the driver of the white Cadillac go to the trunk of the car, take something out and begin firing. This information was not only material but favorable to the defense; if believed, it tended to confirm that Moore had done the shooting and not appellant.

The Commonwealth presented testimony from witnesses who made positive identifications of appellant as the shooter. The defense presented testimony from Edsel Conner and Michelle Miller who said that appellant had been at the car with them at the time they heard the shots, which they thought were firecrackers. Michelle Miller also testified that, when the Nissan had left the Coulston residence, it had been followed by a white car driven by Craig Moore. Watkins' testimony would have tended to confirm that it had not been appellant who did the shooting. It would also have contradicted the Commonwealth's evidence regarding Moore's location at the time of the shooting.

█ The trial court, having properly compelled the witness to appear, examined him in the presence of counsel. At that time, the witness confirmed that he had observed the driver of the white Cadillac stop his vehicle, open the trunk, and remove something. This time, however, he said he did not know what the person had done thereafter. Because this was inconsistent with the offer of proof and

because the witness now said that he had not observed the driver doing the shooting, the trial court quashed the subpoena and refused to allow the witness to be called by the defense. This was an abuse of discretion. It was not the function of the trial court to determine whether the witness had been truthful and accurate when he gave a statement to the defendant's investigator. The witness's credibility was an issue for the jury. It was enough that Watkins had been an eyewitness to the shooting and had supplied appellant's investigator with information favorable to the defense. Because the witness in this case had information which was relevant and which appeared to be favorable to the defense, the trial court erred when it denied defendant the right to call the witness.[1] This error requires a new trial.

Appellant also contends that the Commonwealth was guilty of prosecutorial misconduct because it offered indirect hearsay testimony and implied by other evidence that he had been a drug dealer. Finally, he contends that his trial counsel was constitutionally ineffective. We have examined these contentions but find no merit therein. Nevertheless, because the court improperly prevented appellant from calling an eyewitness subpoenaed by the defense, we vacate the judgment of sentence and remand for a new trial.

Reversed and remanded for a new trial. Jurisdiction is not retained.

POPOVICH, J., files a Dissenting Statement.

POPOVICH, Judge, dissenting:

I respectfully dissent from the opinion of the majority. Instantly, the majority, concluding that the lower court

1. If the witness proved to be a hostile witness, appellant may have elected to use the witness's prior statement for purposes of cross-examining him. See: *Commonwealth v. Dancer*, 452 Pa. 221, 305 A.2d 364 (1973); *Commonwealth v. Barber*, 275 Pa.Super. 144, 151–152, 418 A.2d 653, 657 (1980); *Commonwealth v. Quartman*, 253 Pa.Super. 460, 466–467, 385 A.2d 429, 433 (1978); *Commonwealth v. Filer*, 249 Pa.Super. 349, 352–353, 378 A.2d 330, 331–332 (1977).

abused its discretion when it quashed the defense subpoena of Robin Watkins, determined:

> ... It was not the function of the trial court to determine whether the witness had been truthful and accurate when he gave a statement to defendant's investigator. The witness's credibility was an issue for the jury. It was enough that Watkins had been an eyewitness to the shooting and had supplied appellant's investigator with information favorable to the defense. Because the witness in this case had favorable information to the defense, the trial court erred when it denied defendant the right to call the witness.

The majority, in so ruling, has misconstrued the lower court's determination. The court did not assess the credibility of Watkins, but rather, merely recognized that Watkins' testimony was not favorable to the defense. The fact that Watkins had previously informed the defense investigator that the driver of the white Cadillac had done the shooting is not relevant to the court's determination of whether to quash the subpoena. Watkins testified, in court, that he did not see the driver of the white Cadillac fire a weapon. Such testimony would have, in fact, refuted appellant's defense that the driver of the white Cadillac was the "shooter". Accordingly, it was not an abuse of discretion for the trial court to refuse to compel Watkins' attendance at trial. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

As a practical matter, the defense could not present Watkins' prior testimony concerning the shooting, except by declaring Watkins a hostile witness and examining him on his prior inconsistent statement, i.e., calling his own witness a liar. I dare speculate that if defense counsel had put a witness on the stand whose direct testimony contradicted his defense, we would currently be faced with an ineffective assistance of counsel appeal.

Accordingly, I would affirm the decision of the court below.