COMMONWEALTH of Pennsylvania, Appellee

v.

**Gary BANKS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 28, 2008.

Filed April 1, 2008.

Michael J. Garofalo, Uniontown, for appellant.

Nancy Vernon, Assistant District Attorney, Uniontown, for Commonwealth, appellee.

BEFORE: BENDER, GANTMAN, and TAMILIA, JJ.

Opinion by GANTMAN, J.:

¶ 1 Appellant, Gary Banks, appeals from the judgment of sentence entered in the Fayette County Court of Common Pleas, after a jury convicted him of aggravated assault[1] and simple assault.[2] Appellant asks us to determine whether the trial court abridged Appellant's "absolute" constitutional right to compel the attendance at trial of his four proposed inmate-wit-

1. 18 Pa.C.S.A. § 2702.

2. 18 Pa.C.S.A. § 2701.

3. The trial court opinion also references Melvin Lindsay as one of Appellant's proposed inmate-witnesses: "One of the other prospective 'witnesses' (Melvin Lindsay) had concluded a jury trial before the undersigned where a portion of the trial was conducted at SCI

nesses. We hold under both federal and state law, the trial court generally has discretion on motions to secure witnesses and properly exercised its discretion in this case to deny transport orders for Appellant's proposed inmate-witnesses, absent a plausible showing the witnesses would provide material testimony favorable to Appellant's defense. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this appeal are as follows. On December 9, 2005, Appellant was incarcerated in the long-term segregation facility at SCI–Fayette. That day, Appellant's cell door inadvertently opened. Appellant left his cell and assaulted a corrections officer. Other corrections officers arrived and restrained Appellant.

¶ 3 On March 5, 2007, Appellant's trial began. For the first time, Appellant requested the trial court to transport from prison two inmate-witnesses (Kelvin Rex and Albert Dantzler), who allegedly viewed the altercation and could substantiate Appellant's self-defense claim. The court initially refused, absent sworn testimony or an affidavit averring that these two inmate-witnesses had relevant personal knowledge of the events. Appellant then argued for the appearance of two other proposed inmate-witnesses (David Henry and Bruce Farrell). The court refused to transport Mr. Henry, absent an affidavit averring to what he had observed. Appellant then requested a continuance of his trial, which the court denied.[3]

Fayette because the witnesses he wanted to call could not physically be transported to the [c]ourthouse in less than ten days. Once that trial was reconvened at SCI Fayette, it was discovered that seven of the ten listed witnesses had actually seen nothing at all." (Trial Court Opinion, filed October 22, 2007, at 2). Appellant's brief does not refer to Mr. Lindsay as a potential witness or argue that

¶ 4 Appellant repeated his request to transport the two originally-requested inmate-witnesses (Mr. Rex and Mr. Dantzler). The court agreed, contingent upon an affidavit by Appellant or Appellant's counsel summarizing the two inmate-witnesses' proposed testimony. Appellant submitted an affidavit purporting to aver that the two inmate-witnesses would testify they had observed Appellant fighting with the corrections officers. The court again refused to transport the two proposed inmate-witnesses, reasoning the "affidavit [was unintelligible and] does not establish that their testimony is going to be helpful to the defense." (N.T., 3/5/07, at 26). Later that day, Appellant submitted a second affidavit substantially similar to the first. The court again rejected the affidavit.

¶ 5 After a two-day trial, a jury convicted Appellant of aggravated assault and simple assault. On May 11, 2007, the court sentenced Appellant to five (5) to ten (10) years' imprisonment, consecutive to Appellant's current prison sentence.

¶ 6 Appellant timely filed a notice of appeal on June 8, 2007. The trial court ordered a Rule 1925(b) statement that same day, and Appellant timely complied on June 22, 2007.

¶ 7 Appellant raises one issue for our review:

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO ISSUE TRANSPORT ORDERS FOR APPELLANT'S WITNESSES TO THE PRESENT CASE, WHO WERE HOUSED AT THE STATE CORRECTIONAL FA-

CILITY IN THE SAME SECTION AT THE TIME OF THE INCIDENT[?]

(Appellant's Brief at 4).

■ ¶ 8 The appellate standard of review of a trial court's ruling on transporting witnesses is abuse of discretion. *Commonwealth v. Lahoud*, 339 Pa.Super. 59, 488 A.2d 307, 310 (1985) (collecting cases).

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super.2004) (en banc), appeal denied, 583 Pa. 659, 875 A.2d 1073 (2005) (internal citations and quotation marks omitted).

¶ 9 Appellant argues the trial court should have issued transport orders in response to Appellant's request to compel the attendance of the four inmate-witnesses (Mr. Rex, Mr. Dantzler, Mr. Henry, and Mr. Farrell). Appellant contends Mr. Rex and Mr. Dantzler would have testified they had observed the fight between Appellant and the corrections officers. Appellant relies on *Commonwealth v. Terry*, 258 Pa.Super. 540, 393 A.2d 490 (1978) for the proposition that the constitution guarantees him an "absolute" right to compel the attendance at trial of any and all witnesses. Appellant claims the court's failure to assist Appellant violated his constitutional right to have witnesses present for

Mr. Lindsay's testimony was material. Therefore, we give Mr. Lindsay no further atten-

tion.

his defense. Appellant concludes the court erred and, as a result, he is entitled to an arrest of judgment or a new trial. We disagree.

∎ ¶ 10 Initially, we observe a criminal defendant's constitutional right to compel the attendance of witnesses is **not** absolute. *Commonwealth v. McKenzie*, 399 Pa.Super. 22, 581 A.2d 655, 657 (1990). "The constitutional right to compulsory process does not grant to a defendant 'the right to secure the attendance and testimony of any and all witnesses: it guarantees him compulsory process for obtaining **witnesses in his favor.**'" *Lahoud, supra* at 310 (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193, 1202 (1982)) (emphasis in original) (some internal quotation marks omitted). "The law both in Pennsylvania and most other jurisdictions, therefore, is . . .'[t]he trial court has discretion on motions to secure witnesses.'" *Lahoud, supra* (quoting *Commonwealth v. Sullivan*, 484 Pa. 130, 135, 398 A.2d 978, 980 (1979)) (alteration in original) (collecting cases). For example, the court can deny a request as untimely, unless there was no "previous opportunity to make it or [defendant] or his attorney was unaware of the grounds for it." *Id.*

∎ ¶ 11 The defendant fails to demonstrate a violation of his constitutional right to compel the attendance of witnesses at trial merely by showing he was deprived of their testimony. *Valenzuela–Bernal, supra.* To the contrary, the defendant "must make some plausible showing of how [the witnesses'] testimony would have been both material and favorable to [the] defense." *Id.* (footnote omitted). Testimony is material in this context if it is capable of affecting the outcome of the trial. *McKenzie, supra. Accord Lahoud, supra.*

¶ 12 In response to Appellant's issue, the trial court reasoned:

After the appeal was filed, a Rule 1925(b) Order was filed, and the sole ground listed in the "Concise Issues" filed in response by defense counsel is:

1. Whether the trial court committed reversible error by refusing to issue transport orders for [A]ppellant's witnesses to the present case, who were housed at the state correctional facility in the same section at the time of the incident?

As phrased, the issue answers itself. It would be a ludicrous waste of time and money to transport every prisoner "housed at the state correctional facility in the same section [as Appellant] at the time of the incident" without any clear assertion that they had relevant testimony to offer. Yet that is essentially the argument presented by counsel at trial. The [c]ourt took great pains to make it clear what type of proffer was required, yet counsel stubbornly failed to produce a [compliant] proffer, perhaps because the alleged "witnesses" actually had no relevant testimony to offer.

Transport orders are typically issued weeks ahead of trial routinely by the "Motions Judge." Even when issued during Trial Terms, they are routinely issued by the "Plea Judge." On February 23, 2007, the presiding judge (who refused the plea bargain) ordered the Public Defender "to review and discuss a witness list [with Appellant] and shall also prepare and have served any subpoenas of needed witnesses for trial."

On the date set for trial, March 5, 2007, counsel indicated that "transport orders" had not been signed. Counsel had not talked to the prospective witnesses, and still did not have witness statements or anything else to show that the pro-

spective witnesses had anything relevant to say.

\* \* \*

Frankly, this [c]ourt was justifiably of the opinion that [Appellant] just wanted to give some of his fellow inmates a "field trip" to the [c]ourthouse for a day of recreation. This [c]ourt insisted that the defense prepare an affidavit or verified statement of the attorney to show that the prospective witnesses actually had some testimony to offer that would be relevant to the issues in the case. Even after the lunch recess, the handwritten affidavit offered by the defense was unintelligible and did not demonstrate any likelihood that the witnesses had anything relevant to offer.

Subsequently ... counsel presented a typed statement signed by [Appellant] indicating only that two of the prospective witnesses "observed the altercation." "Observing the altercation" in no way suggests that the witnesses observed anything that would have been **exculpatory,** or even remotely relevant. Even to this date, no witness statement has ever been produced that suggests that any exculpatory testimony would have been produced.

Counsel has not specified where his objection was preserved, but the issue of transport orders was discussed repeatedly throughout the trial. [N.T. 3/5/07, at 3–27, 83.] On page 83 [of the 3/5/07 transcript], the [c]ourt addressed counsel as follows: "So, the sooner you get me a relevant proffer, offer of proof, on those witnesses, the sooner we can execute orders. I do have transport orders signed[;] at this point we would probably be looking to get them transported by 10:15 or 10:30 [tomorrow]. **Again, if and only if we get a relevant proffer.**"

This [c]ourt does not routinely require defense witness statements in advance. The advance statements were required in this case because ... the [c]ourt believed that the "witnesses" were being offered by the defense solely to give them a field trip from their incarceration, and to place an unnecessary burden on the corrections facilities and the county. Had any semblance of relevant testimony been produced, however, the "witnesses" would have been transported.

(Trial Court Opinion at 1–4) (emphasis and some alterations in original).[4] We accept the court's analysis. Here, Appellant was unable to demonstrate that the proposed testimony was either material or favorable to his defense. Essentially, the proposed testimony failed to substantiate Appellant's self-defense claim or exculpate him, where the proposed testimony did not concern the cause of the fight. *See Valenzuela–Bernal, supra; McKenzie, supra; Lahoud, supra.* As the trial court correctly

---

4. In its opinion, the trial court references Mr. Henry and Mr. Lindsay as two of Appellant's proposed inmate-witnesses and discusses why the court denied transport as to them. Regarding Mr. Henry, Appellant failed to argue on appeal any specifics about Mr. Henry's proposed testimony. As to Mr. Henry, the court said: "One of the prospective 'witnesses' (David Henry) had just concluded a jury trial in the undersigned's courtroom where he was convicted of throwing feces, urine, and other body fluids into the faces of two corrections officers, and when on the stand[,] he admitted that he had done so. David Henry stated that he went through the trial solely to get a day off from the boredom of prison life and to come down and look at the 'pretty white women.'" (*See* Trial Court Opinion at 2). Finally, with respect to Mr. Farrell, Appellant does not on appeal argue any specifics about Mr. Farrell's proposed testimony. Accordingly, we give Mr. Farrell no further attention.

noted, "observing the altercation" in and of itself falls short of **exculpatory** or even relevant testimony, because the fight itself was not disputed; only the cause of the fight was disputed. Even on appeal, Appellant does not argue the proposed testimony would have addressed the cause of the fight or suggest the inmate-witnesses would have testified to anything other than observing the fight. Thus, we agree with the court that the testimony as proffered was insufficient to warrant transport of these inmate-witnesses. Therefore, we see no abuse of discretion in the court's decision to deny their transport for the purpose of testifying at Appellant's trial.

¶ 13 Moreover, Appellant mistakenly relies on *Terry, supra* for the proposition that the constitution guarantees him an "absolute" right to compel the attendance at trial of any and all witnesses. The word "absolute" is not found in the *Terry* decision. Additionally, *Terry* held that the court had erred when it denied a defense application to subpoena and produce for trial a purported eyewitness, where the subpoena had been timely requested. Further, the *Terry* decision predates later decisions of the United States Supreme Court and the Pennsylvania Courts. *See Valenzuela–Bernal, supra; Sullivan, supra; McKenzie, supra; Lahoud, supra.* To the extent *Terry* can be said to suggest an "absolute" constitutional right to compel the attendance at trial of any and all witnesses, later decisions hold otherwise. These later decisions make clear that a criminal defendant's constitutional right to compel the attendance of witnesses at trial is a qualified right; the request must be both reasonable and timely. *See Valenzuela–Bernal, supra; Sullivan, supra; McKenzie, supra.*

¶ 14 Based upon the foregoing, we hold the trial court properly exercised its discretion to deny transport orders for Appel-

lant's proposed inmate-witnesses, absent a reasonable showing that the witnesses could provide material testimony favorable to Appellant's defense. Accordingly, we affirm the judgment of sentence.

¶ 15 Judgment of sentence affirmed.