J-S07009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RACQUEL MERCEIR | : | |
| | : | |
| Appellant | : | No. 2809 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 30, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0005880-2018

BEFORE:   NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 11, 2020**

Appellant Racquel Merceir appeals from the judgment of sentence following her bench trial convictions for criminal mischief, harassment, and disorderly conduct.[1]  Appellant contends that the trial court erred by denying her request to enforce a subpoena for a witness to testify at trial.  We affirm.

The trial court summarized the relevant facts of this case as follows:

Mrs. Allison Jordan [(Complainant)] testified that for some time prior to June 16th, 2018, her husband Elliott [(Mr. Jordan)], was having a relationship with [Appellant].  On the 15th, [Mr. Jordan] came back to their marital residence and told [Complainant] he wanted to work things out.  [Complainant] believes [Appellant] found out that [Mr. Jordan] wanted to reconcile with her and got mad.  At approximately 1:30 in the morning on June 16th, 2018, [Appellant] came to their house and was banging loudly on the door.  [Complainant] went downstairs and saw a woman standing

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3304(a)(2), 2709(a)(3), and 5503(a)(4), respectively.

at the door. [Complainant] opened the door and made an in-court identification of [Appellant], as the woman who was banging on her door. When [Complainant] opened the door, [Appellant] asked if [Mr. Jordan] were home. [Complainant] replied, "yes, who are you[?]" [Appellant] said "I'm Racquel". [Complainant] then slammed the door and locked it. [Complainant] had found out a week to 10 days earlier that her husband was having an affair with a woman named Racquel. [Appellant] then began screaming and smashed the window panels in the front door of the residence. [Complainant] went upstairs to get her cell phone and called the police. [Complainant] doesn't remember everything [Appellant] said, but she was screaming loudly enough that [Complainant's] kids woke up and became very upset. In addition to br[e]aking the two glass panels on the front door, [Appellant] then smashed the front door with a hard object which [Complainant] believes was a screwdriver. [Complainant] then heard tires popping and air coming out of the tires. [Complainant] discovered all four of the tires on her 2016 Toyota Camry had been slashed and the back window and both side mirrors were broken, and the car had been scratched. . . . When the police arrived five to ten minutes later, [Appellant] was gone.

Trial Ct. Op., 11/14/19, at 1-3 (record citations omitted).

The trial court conducted a bench trial on June 27, 2019. At the beginning of trial, Appellant informed the trial court that she had subpoenaed Mr. Jordan and that he did not appear for trial. N.T. Trial, 6/27/19, at 5. Appellant then requested that the trial court issue a material witness warrant for Mr. Jordan. *Id.* The trial court asked for an offer of proof, and Appellant's counsel stated:

Your Honor, the offer of proof would be -- well, one, some actual testimony, since he was a witness there. There's no statements given [by Mr. Jordan]. There's nothing here. He was actually engaged in a relationship with my client at that time, and I'd like him to come in and testify to that nature, as well as to the happenings of that evening. **I don't believe he'd testify in the same manner as with [Complainant]**, and that's why I ask for his purpose [sic] here.

- 2 -

*Id.* at 5-6 (emphasis added).[2]  The Commonwealth responded that

> [t]here's nothing indicating that Mr. Jordan was actually downstairs when [Appellant] arrived at the residence.  He doesn't establish the identification.  He doesn't establish any material fact necessary in this case, doesn't disprove any of those facts
>
> \*   \*   \*
>
> I don't see how he's a material witness for the [d]efense.

*Id.* at 6.  The trial court denied Appellant's request for a material witness warrant, stating: "All right.  Well, he didn't come, so we'll go forward." *Id.*

Complainant was the sole witness for the Commonwealth and testified consistently with the trial court's summary of the facts.  Appellant was the sole witness for the defense.  Appellant testified that Mr. Jordan stayed at her home on the evening of June 14, 2018, and that he was still in her home when she left for work on June 15, 2018, at 2:30 p.m. *Id.* at 43-44, 51.  Appellant then testified that she got off from work at 11:30 p.m. that evening, and that she returned home around 1:30 a.m. on June 16. *Id.* at 46-47.  She testified that she was expecting Mr. Jordan to come over and sent him a text message around 3:00 a.m. to ask if he was still coming over. *Id.* at 46-47, 50.

---

[2] The parties filed a stipulation to correct the notes of testimony on November 4, 2019, and the trial court entered an order correcting the notes that same day.  We have quoted the corrected notes of testimony.

Appellant further testified that Complainant had been sending her harassing text messages since June 4, 2018, when Complainant learned that Appellant and Mr. Jordan were in a relationship. *Id.* at 41-43.

After both parties rested, the trial court took the verdict under advisement. *Id.* at 66. Later that same day, the trial court issued a written verdict finding Appellant guilty of criminal mischief, harassment, and disorderly conduct. Verdict, 6/27/19.

The trial court deferred sentencing for the preparation of a pre-sentence investigation report (PSI). Order, 6/27/19. On July 30, 2019, the trial court imposed an aggregate sentence of two years' probation and ordered Appellant to pay $1,100 in restitution to Complainant. Appellant filed a timely post-sentence motion on August 9, 2019 seeking a judgment of acquittal. Following a hearing on August 26, 2019, the trial court denied Appellant's post-sentence motion. N.T. Post-Sentence Mot. Hr'g, 8/26/19, at 5.

Appellant filed a timely notice of appeal on September 24, 2019. Appellant timely filed a Pa.R.A.P. 1925(b) statement on November 4, 2019, challenging the trial court's refusal to enforce her subpoena, among other claims.[3]

_____

[3] In her Rule 1925(b) statement, Appellant presented the following issues: (1) the trial court erred in refusing to enforce her subpoena issued to the Complainant's husband, (2) the evidence was insufficient to sustain the conviction for criminal mischief because the Commonwealth failed to prove she intentionally or recklessly tampered with tangible property of another, or

The trial court filed a responsive Rule 1925(a) opinion. Relevant to this appeal, the trial court explained that it "did not abuse its discretion in refusing to enforce a subpoena for a witness whose testimony would not have benefitted the defense." Trial Ct. Op., 11/14/19, at 9 (citing **Commonwealth v. Douris**, 766 A.2d 1276, 1279 (Pa. Super. 2001), and **Commonwealth v. Lahoud**, 488 A.2d 307, 311 (Pa. Super. 1985)). The trial court concluded that "[Appellant] was unable to articulate how the witness'[s] testimony would have been favorable to the defense and therefore the court did not abuse its discretion in refusing to enforce the subpoena."[4] **Id.** at 10.

Appellant raises a single issue for review:

Whether the [trial] court erred when it refused to enforce the defense subpoena issued to [Mr. Jordan,] [C]omplainant's husband, especially where defense counsel proffered that [Mr.

_____

that her alleged tampering endangered person or property, (3) the evidence was insufficient to sustain the conviction for criminal mischief, graded as a misdemeanor of the second degree, because the Commonwealth failed to prove she caused damages in excess of $1,000, and (4) the restitution order was illegal because the Commonwealth failed to prove she caused $1,100 in damages. Rule 1925(b) Statement, 11/4/19, at 1-2 (unpaginated).

[4] In **Douris**, we found that the trial court did not abuse its discretion in quashing a witness subpoena when the defendant intended for the witness to authenticate a letter the witness had written when the trial court allowed the defendant to introduce the letter without the witness's authentication because the letter went to the defendant's state of mind. **Douris**, 766 A.2d at 1279. We further observed that because the witness who authored the letter was not present when the crime was committed, the witness's testimony could not have affected the outcome of the trial. **Id.** To the extent that the trial court erred in relying on **Douris**, we "may affirm on any legal basis supported by the certified record." **Commonwealth v. Torres**, 176 A.3d 292, 297 n.5 (Pa. Super. 2017) (citation and quotation marks omitted).

Jordan] was an important witness who was present during the alleged incident and would contradict [C]omplainant's version of events?

Appellant's Brief at 5.

Appellant contends that the trial court's refusal to enforce her subpoena to compel the appearance of Mr. Jordan, Complainant's husband, violated her due process right to offer witnesses in her defense. *Id.* at 12-19 (citing, *inter alia*, ***Commonwealth v. Terry***, 393 A.2d 490, 492 (Pa. Super. 1978) (*per curiam*)). Appellant argues that she was entitled to compel the appearance of Mr. Jordan as a witness of her trial when her proffer established that his testimony would have been favorable and material to her defense. *Id.* at 12 (citing ***Commonwealth v. McKenzie***, 581 A.2d 655, 657 (Pa. Super. 1990)).

According to Appellant, Mr. Jordan's testimony would have contradicted Complainant's testimony, which would have resulted in the trial court finding Complainant not credible. *Id.* at 15-16, 18-19. Appellant argues that Mr. Jordan's testimony was critical to her defense, because this case "hinged on a credibility determination between [C]omplainant and [Appellant] . . . ." *Id.* at 15. Appellant further contends that the trial court abused its discretion in refusing to enforce the subpoena solely on the grounds that Mr. Jordan had not voluntarily appeared. *Id.* at 16-17. Appellant concludes that "[s]ince the [trial] court's stated reason was manifestly unreasonable, the only conceivable explanations remaining for the court's refusal to enforce [Appellant's] subpoena involve improper motives personal to the judge." *Id.* at 19.

The Commonwealth responds that Appellant's offer of proof did not establish that Mr. Jordan's testimony would have been both favorable and material. Commonwealth's Brief at 11-13. The Commonwealth contends that Appellant's offer of proof was vague because it did not state if Mr. Jordan had first-hand knowledge about the crimes of which Appellant was accused and provided no details about what Mr. Jordan would say if he testified. *Id.* at 12. According to the Commonwealth, Appellant failed to establish that Mr. Jordan's testimony would both contradict Complainant's testimony and be favorable to Appellant. *Id.* at 12. The Commonwealth concludes that the trial court did not abuse its discretion in denying Appellant's request to enforce the subpoena. *Id.* at 13.

We review a trial court's decision to enforce or quash a subpoena for an abuse of discretion. *See Commonwealth v. Walsh*, 36 A.3d 613, 620 (Pa. Super. 2012); *see also McKenzie*, 581 A.2d at 657-58. "An abuse of discretion is not a mere error in judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record." *Commonwealth v. Akhmedov*, 216 A.3d 307, 316 (Pa. Super. 2019) (*en banc*) (citations and quotation marks omitted), *appeal denied*, No. 422 EAL 2019 (Pa. Feb. 4, 2020). This Court "may affirm on any legal basis supported by the certified record." *Commonwealth v.*

***Torres***, 176 A.3d 292, 297 n.5 (Pa. Super. 2017) (citation and quotation marks omitted).

This Court has observed that

under both our state and federal constitutions, a criminal defendant has a right of compulsory process to obtain witnesses in his favor. The right to compulsory process encompasses the right to meet the prosecution's case with the aid of witnesses, and the right to elicit the aid of the Commonwealth in securing those witnesses at trial, both of which are fundamental to a fair trial. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law. ***Washington v. Texas***, 388 U.S. 14, 19 (1967). The constitutional right, though fundamental, is not, however, absolute. **In order to compel the attendance of a witness at trial, it must be shown that the information possessed by the witness is material, *i.e.*, capable of affecting the outcome of the trial, and that it is favorable to the defense.** ***United States v. Valenzuela-Bernal***, 458 U.S. 858 (1982).

***McKenzie***, 581 A.2d at 657 (some citations and quotation marks omitted) (emphasis added); ***see also Commonwealth v. Banks***, 946 A.2d 721, 725 (Pa. Super. 2008) (holding that, to establish a violation of his or her right to compulsory process, "the defendant must make some plausible showing of how the witnesses' testimony would have been both material and favorable to the defense." (citation and some formatting omitted)).

A defendant seeking to compel the attendance of a witness is "not relieved of the burden of showing that the missing witness would have given favorable [and material] testimony merely because the defense did not have prior access to the witness." ***Lahoud***, 488 A.2d at 311. "In such

circumstances it is of course not possible to make any avowal of **how** a witness may testify. But the events to which a witness might testify, and the relevance of those events to the crime charged, may well demonstrate either the presence or absence of the required materiality." *Id.* (citation and quotation marks omitted).

In *Terry*, the defendant was charged with assault by a prisoner after he had an altercation with a guard while incarcerated in Allegheny County Jail. *Terry*, 393 A.2d at 491. At trial, the defendant called one correctional officer and four current or former Allegheny County Jail inmates as witnesses at trial. *Id.* at 492. The defendant subpoenaed an additional inmate witness, Robert Saunders, who was not present at trial because he had been transferred to the federal penitentiary in Lewisburg, Pennsylvania. *Id.* The trial court declined to enforce the subpoena for Saunders because "[h]is testimony would have been cumulative at best and as such of questionable probative value." *Id.* at 493. On appeal, this Court held that the trial court erred in denying the defendant's request to enforce Saunders' subpoena by "making the value judgment that Robert Saunders' testimony would be cumulative at best and have little, if any, probative value."[5] *Id.* at 493.

---

[5] Unlike later cases, the *Terry* Court did not address the requirement that a defendant must establish the materiality of the requested witness's testimony in order to obtain relief.

In **McKenzie**, the defendant was accused of a non-fatal shooting involving three victims on Weaver Street in Philadelphia. **McKenzie**, 581 A.2d at 656. One of the victims had been driving a Cadillac, but fled on foot when he saw the defendant approaching with a gun. **Id.** It was the defendant's position that the driver of the Cadillac was the actual shooter, and that the defendant was not on Weaver Street at the time of the shooting. **Id.** at 657. One of the eyewitnesses who the defendant subpoenaed failed to appear for trial. **Id.** at 656. The defendant asked the trial court to compel this witness's appearance, and made an offer of proof that in a prior statement the witness stated that he was on corner of Weaver and Williams Streets at the time of the incident and saw the driver of the Cadillac retrieve something from the trunk of the Cadillac and begin firing. **Id.** at 656-57. The trial judge then compelled the witness to appear. **Id.** at 657.

The trial judge then questioned the witness in the presence of counsel. **Id.** at 657. "At that time, the witness confirmed that he had observed the driver of the white Cadillac stop his vehicle, open the trunk, and remove something. This time, however, he said he did not know what the person had done thereafter." **Id.** at 657. The trial court concluded that the witness's testimony "was inconsistent with the [defendant's] offer of proof and because the witness now said that he had not observed the driver doing the shooting, the trial court quashed the subpoena and refused to allow the witness to be called by the defense." **Id.** This Court reversed, finding that

- 10 -

> [i]t was not the function of the trial court to determine whether the witness had been truthful and accurate when he gave a statement to the defendant's investigator. The witness's credibility was an issue for the jury. It was enough that [the witness] had been an eyewitness to the shooting and had supplied [the defendant's] investigator with information favorable to the defense. Because the witness in this case had information which was relevant and which appeared to be favorable to the defense, the trial court erred when it denied [the] defendant the right to call the witness. This error requires a new trial.

*Id.* at 657-58 (footnote omitted).

In *Lahoud*, the defendant was charged with attempting to sell narcotics to undercover officers and a paid police informant. *Lahoud*, 488 A.2d at 309. The Commonwealth alleged that the defendant and his partner discussed selling hashish with the informant and undercover officers and that the defendant's partner provided a sample of hashish to the informant. *Id.* Prior to trial, the informant was sentenced on unrelated state charges, but was remanded to federal custody as part the federal government's witness protection program. *Id.* The Commonwealth did not call the informant as a witness, so the defendant served a writ of *habeas corpus ad testificandum* directing the United States Marshal's Office to produce the informant for trial. *Id.* The Marshal refused to comply unless the county paid for the costs of transportation and security for the witness. *Id.* at 309-10. After hearing the questions defense counsel intended to ask the informant,[6] the trial court

---

[6] These questions are not repeated in the opinion, but earlier in the opinion, we noted that defendant claimed that his actions were the result of duress and/or entrapment. *Lahoud*, 488 A.2d at 309.

- 11 -

denied the defendant's request to order production of the informant as a witness and pay costs of doing so to the Marshal. *Id.* at 310-11. This Court concluded that

> [t]he witness . . . was a paid police informant. He was also a witness which the Commonwealth had intended to use in establishing [the defendant's] guilt. Although he clearly was in possession of information relevant to the issue of [the defendant's] guilt, the record reveals no basis for believing that his testimony would have been favorable to the defense. [The defendant's] trial counsel propounded questions which she would have liked to ask [the witness], but there is no basis for believing that the answers of the witness would have been favorable to the defense. The Commonwealth had decided to forego the presence of the witness. Defense counsel, if the witness had been present under the circumstances, would not have been entitled to call the witness as of cross-examination. If he were called as a defense witness, the defense would be required to vouch for his veracity. When viewed in this light, the record fails to demonstrate that [the witness] was material to the defense or that he had information favorable to [the defendant].

*Id.* at 311. As a result, we affirmed the trial court's denial of the defendant's request to have the informant produced as a witness on the basis that, while the informant's testimony was material, the defendant had failed to demonstrate that the informant's testimony would have been favorable to the defense. *Id.* at 312.

**Banks** involved an inmate accused of assaulting a guard while incarcerated. **Banks**, 946 A.2d at 722. On the first day of trial, the defendant requested, for the first time, that the trial court order four inmates to be transported from the prison to the courthouse to testify as witnesses. *Id.* at 422. The defendant claimed that these inmates were witnesses to the

altercation and that they could substantiate the defendant's claim of self-defense. *Id.* The trial court denied the request unless the defendant proffered an affidavit or sworn statement summarizing the witnesses' proposed testimony. *Id.* at 723. Later that same day, the defendant submitted an affidavit in support of his request to have the inmates brought to court to testify. *Id.* The trial court denied the request, reasoning that the handwritten affidavit "[was unintelligible and] does not establish that their testimony is going to be helpful to the defense." *Id.* at 723, 725 (record citation and quotation marks omitted). The defendant renewed his request with a second, typed, affidavit indicating that two of the prospective witnesses "observed the altercation." *Id.* The trial court again denied the request to produce the inmate witnesses. *Id.* (record citation omitted).

On appeal, the **Banks** Court affirmed, holding that the defendant "was unable to demonstrate that the proposed testimony was either material or favorable to his defense. Essentially, the proposed testimony failed to substantiate [the defendant's] self-defense claim or exculpate him, where the proposed testimony did not concern the cause of the fight." *Id.* at 725. Lastly, we noted that even on appeal, the defendant had not "argue[d] the proposed testimony would have addressed the cause of the fight or suggest the inmate-witnesses would have testified to anything other than observing the fight." *Id.* at 726.

Turning to the present case, Appellant initially argues that the trial court's denial of Appellant's request to enforce the subpoena at trial evidenced an abuse of discretion. Regardless of the trial court's terse statement denying Appellant's request due to Mr. Jordan's failure to appear at trial, however, Appellant bore the burden of establishing the witness's testimony would be material and favorable. **See Banks**, 946 A.2d at 724; **McKenzie**, 581 A.2d at 657. Specifically, Appellant was required to make a proffer regarding the events to which a witness might testify, and the relevance of those events to the crime charged to demonstrate the required materiality. **See Lahoud**, 488 A.2d at 311. Therefore, we consider Appellant's proffer.

Instantly, Appellant proffered that "[t]here's no statements given [by Mr. Jordan]." N.T. Trial, 6/27/19, at 5-6. Nevertheless, Appellant, through counsel, claimed that she did not "believe [Mr. Jordan would] testify in the same manner as with [Complainant]." **Id.** at 6. Appellant did not provide any information in support of her belief that Mr. Jordan would offer testimony contradictory to that of Complainant's expected testimony. Nor did Appellant indicate any other facts she believed Mr. Jordan would testify to if he were compelled to appear and testify.

We conclude that Appellant's proffer is akin to those in **Lahoud** and **Banks**. As in **Lahoud**, nothing in Appellant's proffer established that Mr. Jordan's testimony would have been favorable to her. **See Lahoud**, 488 A.2d at 311. Additionally, like in **Lahoud**, Appellant did not establish the

materiality of Mr. Jordan's testimony by explaining what events Mr. Jordan might testify about, and the relevance of those events to the crimes charged. Like in **Banks**, Appellant's proffer did not provide a sufficient factual background for the trial court to believe that the proposed witness's testimony would have been material and favorable to Appellant's defense. **See Banks**, 946 A.2d at 725-26.

Furthermore, Appellant's reliance on **McKenzie** and **Terry** is unavailing. The facts of this case are unlike those of **McKenzie**, in which the defendant's proffer included that the witness viewed the incident and previously gave a statement indicating that someone other than the defendant was the shooter. **See McKenzie**, 581 A.2d at 656-57. To the extent Appellant contends that her proffer provided equal or more detail than the proffer in **Terry**, we note that **Terry** was silent as to the potential substance of the missing witness's testimony. However, as discussed in **Banks**, **Terry** does not stand for the proposition that there is an "'absolute' right to compel the attendance at trial of any and all witnesses." **Banks**, 946 A.2d at 726.

In sum, Appellant did not sufficiently explain the substance of Mr. Jordan's proposed testimony such that the trial court could determine if it was material and favorable to the defense. All Appellant told the trial court was that she believed that Mr. Jordan would contradict Complainant's version of events without offering any specifics. **See** N.T. Trial, 6/27/19, at 5-6. Appellant did not present any information to the trial court about Mr. Jordan's

potential testimony except the unsubstantiated belief that his testimony would contradict Complainant's testimony. Appellant acknowledged that Mr. Jordan had never given any statements that would demonstrate his trial testimony would contradict Complainant's account of events. Appellant's offer of proof was wholly speculative. Accordingly, she failed to demonstrate that Mr. Jordan's testimony would have been both material and favorable. Therefore, the trial court did not violate Appellant's due process right to offer witnesses in her defense.

Based on the foregoing reasons herein, we affirm the judgment of sentence. *See Banks*, 946 A.2d at 724; *McKenzie*, 581 A.2d at 657.

Judgment of sentence affirmed.

Judge King joins the memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/20

- 16 -