J-S13008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWN L. BURTON, | |
| Appellant | No. 451 WDA 2018 |

Appeal from the PCRA Order Entered February 22, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):
CP-02-CR-0004017-1993
CP-02-CR-0004276-1993

BEFORE: BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED MAY 24, 2019**

Appellant, Shawn L. Burton, appeals from the post-conviction court's February 22, 2018 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm in part, vacate in part, and remand for further proceedings consistent with this decision.

The procedural history of this case is lengthy and complex. Our Supreme Court summarized part of that history in a prior appeal in this case, as follows:

> On March 9, 1993, at approximately 12:15 p.m., Officer Gary Fluman, a correctional officer at the Allegheny County Jail,

_____

[*] Retired Senior Judge assigned to the Superior Court.

received a report from an inmate that there was a problem on Range 17, in the East Block of the jail. After requesting backup, Officer Fluman approached Cell 17–S. A group of inmates was gathered outside the cell and advised Officer Fluman that someone was under the bed and would not come out. Initially, Officer Fluman could see only the mattress and bedding, but, when he entered the cell and removed the mattress and bedding, he observed that inmate Seth Floyd had a ligature consisting of a shoe lace and a piece of nylon cord tied around his neck; the other end of the ligature was tied to a chain that holds the bed to the wall. Officer Fluman could not detect a pulse, and another officer who had arrived on the scene radioed for a doctor. A third officer cut the ligature, and the doctor unsuccessfully attempted to revive Floyd. Following an autopsy, it was determined that Floyd died as a result of asphyxiation due to ligature strangulation, and the manner of death was listed as pending due to suspicious circumstances.

During their investigation into Floyd's death, correctional officers interviewed several inmates. One inmate reported that he was walking past Floyd's cell on his way to lunch and observed … Burton and another individual, Melvin Goodwine, engaged in conversation with Floyd inside his cell. When confronted with this information, Goodwine admitted that he had been in Floyd's cell for a short time. [Burton], however, denied being in the vicinity of Floyd's cell around the time of Floyd's death, and, in fact, denied ever being in Floyd's cell. [Burton] later admitted that he was near Floyd's cell at the time he died, but maintained that he had never been inside Floyd's cell.

Two other inmates reported that, a few minutes before Floyd was found dead, they observed [Burton] and Goodwine in Floyd's cell, wrestling him onto his bunk and pinning him while he struggled to free himself. One of these two witnesses also stated that, shortly after he observed the physical altercation among [Burton], Goodwine, and Floyd, he saw [Burton] and Goodwine run down the stairs, away from the area of Floyd's cell. Another witness reported that, a few days before Floyd's death, he overheard a conversation between [Burton] and Goodwine in which [Burton] told Goodwine that they needed to "fix that guy from California." Affidavit for Criminal Complaint against Shawn Burton, 3/19/93, at 2. The witness explained that it is common knowledge in prison that the term "fix" means kill. *Id.* Further, it was confirmed that Floyd originally was from California, having recently moved to the Pittsburgh area. Based on the above

- 2 -

evidence, [Burton] and Goodwine were charged with Floyd's murder.

[Burton] and Goodwine were tried jointly before the Honorable Donna Jo McDaniel. On September 28, 1993, [Burton] was convicted of first-degree murder[1] and conspiracy,[2] and Goodwine was convicted of conspiracy. [Burton] was sentenced to a mandatory term of life imprisonment; Goodwine was sentenced to 5 to 10 years['] imprisonment. [Burton] appealed his judgment of sentence, which was affirmed by the Superior Court. ***Commonwealth v. Burton***, 455 Pa. Super. 691, 688 A.2d 1225 (1996) (unpublished memorandum). This Court denied his petition for allowance of appeal on August 15, 1997. ***Commonwealth v. Burton***, 549 Pa. 696, 700 A.2d 437 (1997).

[1] 18 Pa.C.S. § 2502(a).
[2] 18 Pa.C.S. § 903.

On August 4, 1998, [Burton] filed his first *pro se* PCRA petition, asserting various claims of ineffective assistance of counsel. After a series of procedural irregularities not relevant herein, [Burton] filed an amended PCRA petition on October 5, 2005. The PCRA court dismissed [Burton's] amended PCRA petition on December 12, 2005, and the Superior Court ultimately affirmed the PCRA court's dismissal on February 21, 2007. ***Commonwealth v. Burton***, 924 A.2d 688 (Pa. Super. filed Feb. 21, 2007) (unpublished memorandum), *appeal denied*, 594 Pa. 702, 936 A.2d 39 (2007).

On May 30, 2013, [Burton] received a letter from Charlotte Whitmore, a staff attorney with the Pennsylvania Innocence Project. The letter, dated May 23, 2013, included a copy of a *pro se* "Motion for Partial Expunction of Adult Criminal Record" (hereinafter "Motion to Expunge") filed by Goodwine on July 29, 2009. In the Motion to Expunge, Goodwine asserted that he murdered Floyd "in self defense," but was "advised not to use this defense at trial." Motion to Expunge, at 2 ¶ 4.[1] Goodwine further

---

[1] More specifically, Goodwine stated, in pertinent part:

A requirement of the Pennsylvania Parole Board[] is to accept and own full responsibility for your crime. … Petitioner committed this act in self[-]defense.  However, I was advised not to use this

- 3 -

averred in the motion that "an innocent man went to jail for a crime that [Goodwine] committed." *Id.* [at] ¶ 5. According to Attorney Whitmore, she received copies of the Motion to Expunge and the trial court's subsequent opinion denying the motion from Twyla Bivins, who claimed to have received the documents from Goodwine's ex-girlfriend. In her letter to [Burton], Attorney Whitmore explained that the Innocence Project had not yet determined whether it would become involved in [Burton's] case, but advised him that, if he was not previously aware of the averments made by Goodwine in his Motion to Expunge, [Burton] had 60 days to file a PCRA petition based on this "new evidence." Letter to Shawn Burton from Charlotte Whitmore, 5/23/13, at 1.

On July 11, 2013, [Burton] filed *pro se* a second PCRA petition asserting, *inter alia*, that Goodwine's Motion to Expunge and the statements contained therein constituted newly-discovered exculpatory evidence that was unavailable at the time of his trial and which would have changed the outcome of his trial if the evidence had been introduced, citing, *inter alia*, this Court's decision in **Commonwealth v. Bennett**, 593 Pa. 382, 930 A.2d 1264 (2007), and referencing the exception to the PCRA's time limitations set forth at 42 Pa.C.S. § 9545(b)(1)(ii). On August 6, 2013, the PCRA court issued notice of its intention to dismiss [Burton]'s petition without a hearing pursuant to Pa.R.Crim.P. 907 on the grounds that it was untimely; that [Burton] failed to aver any exceptions to the PCRA's time requirements; that the petition was patently frivolous and without support on the record; that there were no genuine issues concerning any material fact; and that no purpose would be served by an evidentiary hearing. On August 21, 2013, [Burton] filed a response to the PCRA court's Rule 907 notice, and six days later, the PCRA court dismissed [Burton's] PCRA petition as "patently frivolous and without support on the record." PCRA Court Order, 8/27/2013.

---

defense at trial. … [P]etitioner has already admitted to the Parole Board that I committed this act on my own in self[-] defense. Petitioner also admitted and take [*sic*] full responsibility and ownership that an innocent man went to jail for a crime that I committed.

Motion to Expunge at 8 ¶¶ 4, 5 (attached to Burton's *pro se* PCRA petition filed on July 11, 2013 as "Exhibit 2").

[Burton] filed a timely appeal to the Superior Court, and complied with the PCRA court's instruction to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). In his 1925(b) statement, [Burton] claimed, *inter alia*, that he qualified for an exception to the PCRA's time limitations pursuant to 42 Pa.C.S. § 9545(b)(1)(ii), which provides that, where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence," a petition may be filed within 60 days of the date the claim could have been presented. 42 Pa.C.S. § 9545(b)(1)(ii). In its Rule 1925(a) opinion in support of its dismissal of [Burton]'s petition, the PCRA court held that, "because [Burton's] Petition was untimely filed and ... he failed to properly aver any exceptions to the time-limitation provisions" of the PCRA, the court did not have jurisdiction to address the petition. **Commonwealth v. Burton**, 2013 WL 10257583, at *1 (Pa. Common Pleas Allegheny Cty. filed Nov. 4, 2013).

In July 2014, in an unpublished memorandum opinion, a divided panel of the Superior Court vacated the PCRA court's order and remanded for an evidentiary hearing. The Commonwealth filed a timely application for reargument *en banc*, which the Superior Court granted, and the Superior Court withdrew its panel decision.

On August 25, 2015, in a published opinion authored by President Judge Emeritus John Bender, the *en banc* Superior Court vacated the PCRA court's order dismissing [Burton]'s second PCRA petition, and remanded for an evidentiary hearing. **Commonwealth v. Burton**, 121 A.3d 1063 (Pa. Super. 2015) (*en banc*) [(**Burton I**)].

**Commonwealth v. Burton**, 158 A.3d 618, 620–23 (Pa. 2017) (**Burton II**)

(some footnotes omitted).

Briefly, the *en banc* panel of this Court in **Burton I** rejected the notion that because Goodwine's motion to expunge was a public record, we were constrained, under our Supreme Court precedent, to presume that it could not be considered "unknown" by Burton. **See Burton I**, 121 A.3d at 1071-72. Instead, we opined that such a presumption cannot be reasonably applied to

*pro se*, incarcerated petitioners. *Id.* at 1072-73. Accordingly, the **Burton I** majority held that "the presumption of access to information available in the public domain does not apply where the untimely PCRA petitioner is *pro se*." *Id.* at 1073. Applying that law to Burton's case, the **Burton I** panel concluded that "without the benefit of an evidentiary record developed below, [Burton's] diligence may be sufficient," and that he had "raise[d] genuine issues of material fact that warrant development." *Id.* Consequently, we vacated the PCRA court's order denying Burton's petition and remanded for an evidentiary hearing. *Id.*

The Commonwealth filed a timely petition for allowance of appeal from our decision in **Burton I**. On March 28, 2017, our Supreme Court affirmed in **Burton II**. Thus, Burton's case was remanded for an evidentiary hearing to ascertain, without application of the public-record presumption, whether Goodwine's statement in his motion to expunge was unknown to Burton, and whether he exercised due diligence in discovering it.

Judge McDaniel again presided over the PCRA proceedings on remand. Before she conducted an evidentiary hearing on Burton's claim involving Goodwine, Burton (who had retained Craig Cooley, Esq., to represent him) filed a "Supplemental Amended PCRA Petition" on September 18, 2017.[2]

---

[2] Additionally, Burton also filed an "Amended Second PCRA Petition in the Alternative Petitioner's Third PCRA Petition" on May 26, 2017, in which he alleged newly-discovered evidence of a recantation by Marvin Harper, an inmate who had testified against Burton at trial. However, while Harper had

Therein, Burton raised a newly-discovered evidence claim based on an interview that Burton's counsel and an investigator with the Pennsylvania Innocence Project, Zach Stern, had conducted with Brian O'Toole on July 20, 2017. O'Toole was an inmate who had testified against Burton at trial, and he allegedly recanted that trial testimony in the interview with Attorney Cooley and Stern.

Judge McDaniel accepted Burton's supplemental petition and ultimately conducted a separate evidentiary hearing on February 14, 2018 on Burton's claim involving O'Toole, which we discuss further *infra*. First, however, Judge McDaniel held an evidentiary hearing on October 5, 2017, to address Burton's claims premised on Goodwine's confession in his motion to expunge.

At that proceeding, Judge McDaniel initially heard evidence regarding how Burton had discovered Goodwine's expungement motion. She then concluded that Burton had not previously known that information, and that he had acted with due diligence in discovering it, thereby satisfying the timeliness exception of 42 Pa.C.S. § 9545(b)(1)(ii). **See** N.T. PCRA Hearing, 10/5/17, at 48.[3]

---

provided Burton with an affidavit stating his recantation, Harper subsequently refused to talk to Attorney Cooley to verify the facts in the affidavit. **See** Burton's Brief at 25. Accordingly, Attorney Cooley did not subpoena Harper to testify on Burton's behalf at the PCRA hearing conducted on remand. On appeal, he raises no challenge to the PCRA court's dismissal of his newly-discovered evidence claim based on Harper's recantation. **See id.**

[3] The Commonwealth does not challenge this determination on appeal.

Judge McDaniel then turned to the merits of the substantive, newly-discovered evidence claim. In this regard, Attorney Cooley first explained to the court that he wished to call Goodwine, who was present at the proceeding, to the stand to testify, but that he was informed Goodwine intended to invoke his Fifth Amendment right not to testify. N.T. PCRA Hearing, 10/5/17, at 29. Goodwine's counsel, who had been appointed by Judge McDaniel, confirmed that Goodwine intended to exercise his "right to remain silent because his answers may tend to incriminate him." *Id.* at 30. When the Commonwealth pressed counsel "as to what crime" Goodwine was claiming his testimony might implicate him, his counsel stated: "Perjury, unsworn falsification to authorities, and homicide in the federal courts." *Id.* Thereafter, Goodwine took the stand and stated the following as to each question posed about his motion to expunge: "On the advice of my counsel, I exercise my Fifth Amendment right to remain silent because my answers may tend to incriminate me." *Id.* at 32-34. The PCRA court accepted Goodwine's invocation and excused him from the proceeding. *Id.* at 34, 35.

Attorney Cooley then admitted Goodwine's expungement motion without objection by the Commonwealth. *Id.* at 35. The parties offered argument concerning, *inter alia*, whether that document would be admissible as substantive evidence if Burton were afforded a new trial and Goodwine again refused to testify. Attorney Cooley's position was that Goodwine's statements in that document would be admissible as substantive evidence under the 'statement against interest' exception to the rule against hearsay.

*See* Pa.R.E. 804(b)(3); *see also* N.T. PCRA Hearing, 10/5/17, at 43-46. The Commonwealth did not offer a rebuttal argument.

Ultimately, at the close of the hearing, Judge McDaniel denied Burton's newly-discovered evidence claim, explaining her decision, in pertinent part, as follows:

> [The Court]: … [T]here was a prior hearing[,] and I do not have the day for it[,] where [] Goodwine did testify. I found him not to be credible. This seems to be, to me at the time, a manufactured scheme since Goodwine was protected by the double jeopardy clause and what did he have to lose. He had nothing to lose by coming in and helping out a fellow inmate or friend o[r] whatever kind of coconspirator, what kind of relationship they had.
>
> That being said, I have already found [] Goodwine to be incredible at a prior hearing. He refused to testify today. And I feel that both of these outweigh a typewritten motion for expungement and, therefore, the PCRA [petition] as to this issue is denied.

*Id.* at 48-49.

Judge McDaniel then scheduled a second evidentiary hearing to address Appellant's supplemental PCRA petition raising the O'Toole claim. However, prior to that hearing, scheduled for February 14, 2018, O'Toole (who is serving a sentence of life without parole) sent a letter to Judge McDaniel indicating that he would refuse to testify at the hearing, that it would be a "waste of time" to transport him to the proceeding, and that his life would be placed in danger if forced to attend. *See* Burton's Brief at 23. O'Toole also sent a letter to Attorney Cooley indicating that he would not cooperate with the defense. *Id.* at 22. Judge McDaniel informed counsel of O'Toole's letter and expressed that she planned to cancel the order to transport O'Toole to the hearing.

However, Judge McDaniel allowed Attorney Cooley to submit objections to the cancelation, which counsel claims to have sent to Judge McDaniel on February 6, 2018. *Id.* at 24.

At some point before the February 14, 2018 proceeding, Judge McDaniel directed that O'Toole's transportation order be canceled.[4] Accordingly, he was not in attendance at the February 14th hearing. However, his court-appointed counsel, Phillip C. Hong-Barco, Esq., was present, and verified that O'Toole would have refused to testify had he been transported to the hearing:

> [Attorney Hong-Barco:] I did speak with Mr. O'Toole - who is incarcerated at SCI Fayette - over the phone last week. He did reiterate exactly to me what is in his letter, that in no way, shape or form is he going to be cooperating or answering any questions related to this case.
>
> I have received and reviewed, obviously, some of the pleadings in Your Honor's letter, and I was made aware that Your Honor did cancel the transportation order. Other than that, he really doesn't have anything else to say.

N.T. PCRA Hearing, 2/14/18, at 5-6. While O'Toole was not present to testify at the hearing, Attorney Cooley was permitted to admit the substance of O'Toole's recantation through the testimony of Zach Stern, who explained what O'Toole had said during the July 20, 2017 interview. *Id.* at 20-26.

On February 22, 2018, Judge McDaniel entered an order denying Burton's petition, and stating that "[a] new trial will not take place." Order, 2/22/18. Burton filed a timely notice of appeal, and he also timely complied

---

[4] No order canceling O'Toole's transportation order is contained in the certified record, but no one disputes that the transportation order was canceled.

Judge McDaniel's order to file a Rule 1925(b) concise statement of errors complained of on appeal. Judge McDaniel issued her Rule 1925(a) opinion on July 16, 2018. Herein, Burton states two issues for our review:

> [I.] Judge McDaniel erred and violated [] Burton's state and federal due process rights by rejecting [] Burton's newly-discovered fact claim regarding the incriminating statements his co-defendant, Melvin Goodwine, made in his July 2009 expungement motion. U.S. Const. admts. 5, 6, 8, 14; Pa. Const. art. I, §§ 8, 9.

> [II.] Judge McDaniel erred and violated [] Burton's due process rights by striking the transportation order relating to Brien [*sic*] O'Toole's appearance at the February 14, 2018 PCRA hearing. U.S. Const. admts. 5, 6, 8, 14; Pa. Const. art. I, §§ 8, 9.

Burton's Brief at 1-2.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007).

### Timeliness

We must begin by addressing the timeliness of Burton's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. ***Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, at the time Appellant's petition was filed, section 9545(b)(2) required that any petition attempting to invoke one of these exceptions "be filed within sixty days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).[5]

Here, in regard to Burton's claim premised on Goodwine's confession in his expungement motion, Judge McDaniel concluded that Burton satisfied the newly-discovered fact exception. The Commonwealth does not challenge that decision on appeal, and we discern no error in the court's ruling.

---

[5] An amendment to section 9545(b)(2), which became effective on December 24, 2018, changed the language to require that a petition "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Pertaining to Burton's claim premised on O'Toole's recantation, his issue on appeal solely involves Judge McDaniel's cancelation of O'Toole's transportation order. In other words, we are not asked to evaluate the merits of Burton's underlying, newly-discovered evidence claim but, instead, to examine whether Judge McDaniel abused her discretion procedurally. Judge McDaniel did not discuss the timeliness of Burton's O'Toole issue, and the Commonwealth does not contend that the untimeliness of Burton's petition bars our review of the specific claim he presents herein. We conclude that because Burton filed a timely appeal, we possess jurisdiction to examine Judge McDaniel's procedural decision to cancel O'Toole's transportation order. For ease of disposition, we will begin by reviewing this claim.

### O'Toole Claim

Burton argues that Judge McDaniel abused her discretion by canceling the transportation order for O'Toole to be brought to the hearing on February 14, 2018. Before we review the merits of his argument, we must address Judge McDaniel's conclusion that Burton waived this issue by failing "to provide the complete record necessary for an evaluation of this claim, namely the transcript of the February 14, 2018 evidentiary hearing." PCRA Court Opinion (PCO), 7/16/18, at 10. In support of finding waiver, Judge McDaniel relied on Pa.R.A.P. 1911, which states, in pertinent part:

> **(a)** **General rule.** The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 4001 *et seq.* of the Pennsylvania Rules of Judicial Administration.

***

**(d) Effect of failure to comply.** If the appellant fails to take the action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal.

Pa.R.A.P. 1911.

In Burton's brief, Attorney Cooley offers a detailed discussion of his efforts to obtain the transcript of the February 14, 2018 hearing, ultimately arguing that the omission of the transcript from the record before Judge McDaniel was the fault of the Allegheny County Court Reporter's Office (CRO). *See* Burton's Brief at 30-32. However, we need not address Attorney Cooley's argument in this regard, as we conclude the circumstances of this case do not warrant waiver of Burton's O'Toole claim. Clearly, Judge McDaniel canceled O'Toole's transportation order after she received his letter on February 1, 2018, and before the February 14, 2018 hearing. Thus, we fail to see why Judge McDaniel could not explain her rationale for canceling the transportation order simply because she did not possess the transcript of a hearing that occurred *after* that decision was made.

In any event, the transcript of the February 14, 2018 hearing is contained in the certified record before this Court, and Judge McDaniel clearly stated her reasons for canceling the transportation order during that proceeding. *See* N.T. PCRA Hearing, 2/14/18, at 4-5. Thus, our review of Judge McDaniel's decision is not in any way impeded by the fact that she did

not have the at-issue transcript in drafting her opinion. We will not deem this issue waived.

Burton claims that Judge McDaniel abused her discretion in canceling O'Toole's transportation order for several reasons.[6] Initially, we restate the well-settled principle that "[a]n abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." **Walsh**, 36 A.3d at 620 (citation omitted).

Burton first claims that Judge McDaniel abused her discretion because her decision to cancel the transportation order was premised on a letter that was never properly authenticated. He also contends that O'Toole's reasons for refusing to testify were vague and inadequate to support Judge McDaniel's essentially quashing his subpoena. Additionally, Burton insists that Judge

---

[6] The parties agree that Burton's claim is akin to a challenge to a court's decision to quash a subpoena, which we review under an abuse-of-discretion standard. **See** Commonwealth's Brief at 49 (arguing that this issue is "analogous to either the decision to deny a transport order or the decision to quash a subpoena" and that "[i]n both instances, the appellate standard for reviewing such decisions is whether the court abused its discretion") (citing **Commonwealth v. Banks**, 946 A.2d 721, 723 (Pa. Super. 2008) (stating that a "trial court's ruling on transporting witnesses is abuse of discretion"); **Commonwealth v. Walsh**, 36 A.3d 613, 620 (Pa. Super. 2012) ("Whether a subpoena shall be enforced rests in the judicial discretion of the court.")); **see also** Burton's Brief at 74 ("Whether a subpoena shall be enforced rests in the trial court's discretion.") (citing **Branham v. Rohm & Haas Co.**, 19 A.3d 1094, 1103 (Pa. Super. 2011)). We accept this position by the parties.

McDaniel erred because her "primary finding for canceling O'Toole's transportation order was her finding that O'Toole 'is totally, 100 percent, absolutely incredible.'" Burton's Brief at 75 (quoting N.T. PCRA Hearing, 2/14/18, at 10-11). According to Burton, that credibility determination is not supported by the record. In sum, Burton contends that he is entitled to an evidentiary hearing at which he can "confront O'Toole and question him under oath regarding the truthfulness of his trial testimony and July 20, 2017 statement" to Attorney Cooley and Zach Stern. *Id.* at 76.

Having carefully considered the record in this case and Burton's arguments, we conclude that no relief is due. Burton asks this Court to remand his case for a new PCRA hearing at which O'Toole will be subpoenaed to testify. *See id.* at 77. However, O'Toole has clearly expressed that he will *not* cooperate or testify on Burton's behalf. O'Toole's refusal to testify was not solely conveyed in his letter to Judge McDaniel that Burton challenges as not properly authenticated. On the contrary, O'Toole also sent Attorney Cooley a letter stating that he would not cooperate with the defense, and at the PCRA hearing, O'Toole's court-appointed counsel confirmed that O'Toole told counsel he will "in no way, shape or form … be cooperating or answering any questions related to this case" if he is called to testify. N.T. PCRA Hearing, 2/14/18, at 5. Additionally, Zach Stern testified at the PCRA hearing that O'Toole told him at the July 20, 2017 interview that he did "not want to testify at the hearing." *Id.* at 25. Accordingly, nothing in the record suggests that

O'Toole will cooperate and testify on Burton's behalf, were we to order a new hearing on this claim.

Further, we discern no meaningful way that the PCRA court could compel O'Toole to testify. As Judge McDaniel noted, O'Toole is serving a sentence of life incarceration and, therefore, the threat of holding him in contempt of court and additional jail time would not likely induce his cooperation. *See id.* at 5. The Commonwealth also noted that O'Toole would "theoretically have a Fifth Amendment right not to testify … because [the Commonwealth] could charge him with perjury, because he is changing his testimony." *Id.* at 6. Burton offers no response to this argument.

Based on this record, it is reasonable to presume that O'Toole would not testify at a new evidentiary hearing. Thus, Burton would only be able to offer the very same evidence introduced when O'Toole was not present at the hearing on February 14, 2018 – namely, the testimony of Zach Stern. Again, Stern was permitted to testify about the content of O'Toole's interview on July 20, 2017. *See id.* at 21-23. Thus, Judge McDaniel considered the substance of O'Toole's recantation and concluded that it did not warrant a new trial. Curiously, Burton does not present any meaningful argument that Judge McDaniel erred in this regard because O'Toole's statements from the interview are sufficient to warrant a new trial. Instead, he focuses solely on Judge McDaniel's decision to cancel O'Toole's transportation order, contending that he is entitled to a new evidentiary hearing. However, for the reasons stated

*supra*, Burton has failed to establish that the outcome of that proceeding would be different.  Accordingly, he is not entitled to relief.

### Goodwine Claim

Next, we address Burton's argument that Judge McDaniel erred by denying him a new trial based on the newly-discovered evidence of Goodwine's confession in his expungement motion.  Before delving into the specifics of Burton's argument, we initially observe that:

> The four-prong test for awarding a new trial because of after-discovered evidence is well settled. The evidence: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict. ***See Commonwealth v. Pagan***, 597 Pa. 69, 950 A.2d 270, 292 (2008) (citations omitted).

***Commonwealth v. Castro***, 93 A.3d 818, 821 n.7 (Pa. 2014).  Pertinent to our present discussion, this Court has stated that in determining "whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted[,] … a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010) (cleaned up).  Finally, "the proposed new evidence must be producible and admissible." ***Castro***, 93 A.3d at 825 (cleaned up).

In this case, Judge McDaniel concluded that Burton exercised due diligence in discovering Goodwine's expungement motion. ***See*** PCO at 4.  She made no express ruling on the second and third prongs of the above-stated

- 18 -

test. Instead, she proceeded directly to the fourth prong, rejecting Burton's after-discovered evidence claim because she found Goodwine's confession wholly incredible.

Burton challenges that decision, contending that Judge McDaniel's credibility determination regarding Goodwine was premised on factors not supported by the record. Judge McDaniel expressed four reasons for finding Goodwine's confession incredible: (1) she had found Goodwine's testimony incredible at a "prior hearing," *see* N.T. PCRA Hearing, 10/5/17, at 48; PCO at 7-8; (2) Goodwine "refused to testify" at the PCRA hearing, N.T. PCRA Hearing, 10/5/17, at 49; PCO at 7-8 ; (3) Goodwine "was protected by the prohibition against double jeopardy" and, thus, he "likely felt he had nothing to lose by adding a confession to his expungement petition," PCO at 8; and (4) the "inescapable conclusion … was that [Goodwine's confession] was a concocted scheme" between Burton and Goodwine, *id.* We will address each of these factors in turn.

First, Burton stresses that Judge McDaniel could not recall the date of the 'prior hearing' at which she found Goodwine incredible, and she did not offer any details regarding the context or content of Goodwine's alleged testimony at that unspecified proceeding. Burton claims that he

> has searched in vain for any record of this prior hearing where Goodwine testified but has found no documentation ordering a hearing or when the hearing occurred. Indeed, Goodwine's Common Pleas Court docket sheet and case file does not list a hearing in connection with his expungement motion, nor does the docket sheet list an entry of a transportation order requiring Goodwine's attendance at [any] hearing.

Burton's Brief at 52. In any event, even if such a record exists, Burton stresses that Judge McDaniel did not incorporate it into the record of *this* case and, therefore, it was impermissible for her to rely on it in making her credibility determination.

We agree. As Burton observes, this Court cannot review, let alone accept, a credibility determination premised on a record that is not before us. Because Judge McDaniel did not incorporate Goodwine's alleged testimony at the unidentified 'prior hearing' at which she deemed him incredible into the record of the present case, it is obvious that it cannot support her decision that Goodwine's confession in the expungement motion was not believable.

Next, Judge McDaniel offers no explanation for why, in her view, Goodwine's invocation of his Fifth Amendment right not to incriminate himself - which Judge McDaniel accepted as valid - casts doubt on the credibility of his confession.[7] Additionally, we agree with Burton that the record lacks support for Judge McDaniel's conclusion that Goodwine "likely felt he had nothing to lose by adding a confession to his expungement petition…." PCO at 8. As Burton avers, "Judge McDaniel's decision at the … hearing to

_____

[7] We point out that neither party challenges Judge McDaniel's acceptance of Goodwine's invocation.

recognize the legitimacy of Goodwine's right to remain silent destroys this finding." Burton's Brief at 48. We agree.[8]

Finally, Burton argues that there is no support for Judge McDaniel's finding that Goodwine and Burton concocted a plan for Goodwine to confess in the expungement motion. Again, we agree. Not only was there no evidence

_____

[8] Although Judge McDaniel did not premise her credibility determination on a conclusion that Goodwine's confession was fabricated solely to obtain parole, the Commonwealth presents this argument on appeal. In particular, the Commonwealth maintains that, because Goodwine stated in his motion to expunge that he was required to take "full responsibility" for his crime to be paroled, it is apparent that Goodwine confessed "to curry favor with the parole board by making a claim that he thought would most likely result in being paroled…." Commonwealth's Brief at 32, 33. However, Burton responds:

> [I]f Goodwine falsely accepted sole responsibility for Seth Floyd's murder simply to obtain parole, why would he give an account of Floyd's murder that differed so dramatically from the narrative at trial that supported his *conspiracy* conviction? His conspiracy conviction, for instance, requires the existence of at least two people "conspiring" with one another to murder Floyd. The Commonwealth's narrative at trial was that Goodwine *and* [] Burton had murdered Floyd.

> If Goodwine wanted to impress upon the parole board that he was truly "remorseful" for what he had done and was taking "full responsibility" for his part in Floyd's murder, why didn't he simply explain how he had "conspired" with [] Burton to "murder" Seth Floyd? In other words, it would have been far easier to obtain parole had Goodwine simply confessed to the narrative presented at trial, *i.e.*, he *and* [] Burton conspired to murder Floyd and that they both had participated in the murder. By removing [] Burton entirely from the narrative, Goodwine ran the risk of having the parole board not believe his account, which in turn decreased the likelihood of being paroled in the first place.

Burton's Brief at 49 (emphasis in original). Burton's argument is a convincing counter to the Commonwealth's position.

presented to back this theory but, as the Commonwealth even concedes, it is wholly illogical to conclude that the two men planned Goodwine's 2009 confession, but Burton then waited until 2013 to raise it in his PCRA petition. **See** Commonwealth's Brief at 33 n.18. Moreover, Judge McDaniel found credible evidence that Burton *first discovered* Goodwine's expungement motion when the Pennsylvania Innocence Project mailed him a copy of it. **See** N.T. PCRA Hearing, 10/5/17, at 47. Had he and Goodwine concocted the plan for Goodwine to confess in 2009, Burton insists he "would not have waited around hoping someone would send him the expungement motion." Burton's Brief at 47. Additionally, if Goodwine confessed solely to help Burton, why would he not have sent that confession to Burton (or at least notified him of its existence)? In light of this record, we agree with Burton, and the Commonwealth, that Judge McDaniel's conclusion that Goodwine and Burton 'concocted' Goodwine's confession is not supported by the record, nor by logic.

In sum, there was no evidence presented at the PCRA hearing on October 5, 2017, to support Judge McDaniel's reasons for finding Goodwine's confession incredible. As her decision to deny his petition was premised on this credibility determination, we must vacate Judge McDaniel's order denying Burton's petition and remand for further proceedings.[9]

---

[9] As Burton observes, on remand, his "case will be assigned to a new judge because Judge McDaniel resigned on December 12, 2018…." Burton's Brief at 32 (citation omitted).

Before concluding, we recognize that remanding would be unnecessary if we accepted either of the Commonwealth's arguments that Goodwine's confession in the expungement motion is hearsay that would not be admissible as substantive evidence at a new trial, or that the confession would not likely result in a new verdict, even if admitted. **See** Commonwealth's Brief at 27-38. Burton offers strong counter-arguments to both of the Commonwealth's claims. **See** Burton's Brief at 42-44; 50-65. Notably, neither of these issues were addressed by Judge McDaniel below, and each potentially involves factual findings and/or credibility determinations that must be made by the PCRA court in the first instance. **See** Pa.R.E. 804(b)(3)(B) (requiring that, to be admissible under this exception, the hearsay statement "is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability"); **see Padillas,** 997 A.2d at 365 (discussing the factual considerations a trial court should assess in determining if the new evidence would likely compel a different verdict).

Therefore, we vacate the PCRA court's order to the extent it denied Burton's after-discovered evidence claim premised on Goodwine's confession in his motion to expunge, and we remand for further proceedings regarding

that claim.[10] On remand, the PCRA court must make credibility determinations regarding Goodwine's confession that are supported by the record before it. If the court finds Goodwine's confession credible, it must then assess whether his statements in the motion to expunge would be admissible as substantive evidence, and whether that evidence would likely result in a different verdict if a new trial were granted. To the extent Judge McDaniel denied Burton's O'Toole claim, we affirm.

Order affirmed in part, vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2019

---

[10] We note that Burton claims, for the first time on appeal, that on October 19, 2017 (after Judge McDaniel denied his Goodwine-related claim), he received from the Pennsylvania Board of Probation and Parole documents from Goodwine's parole file, which included a second, hand-written confession to the murder by Goodwine. *See* Burton's Brief at 19. Specifically, Goodwine allegedly stated, in pertinent part: "I went to Mr. Floyd's cell to fight[.] The fight was getting out of control. And in the middle of our struggle I strangled Mr. Floyds [*sic*] to death with a shoestring I had wrapped around my hand during the fight." *Id.* at 20. Goodwine does not mention Burton anywhere in that confession. Again, Judge McDaniel was not presented with this evidence in ruling on Burton's petition below. We leave it to the discretion of the PCRA court whether it will permit Burton to present this evidence to supplement his Goodwine claim on remand.