J-S29045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON BROWN | : | |
| | : | |
| Appellant | : | No. 492 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 21, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010963-2017

BEFORE:  PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED JULY 21, 2020**

Jason Brown (Brown) appeals from the judgment of sentence entered

on December 21, 2018,[1] by the Court of Common Pleas of Philadelphia County

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Brown's notice of appeal purported to appeal from the trial court order of November 9, 2017.  As there was no order entered on the trial court docket on that date, we issued a rule to show cause why the appeal should not be quashed.  Brown filed a response to the rule averring that the notice of appeal had listed the wrong date in error, but argued that jurisdiction was proper because the notice was filed within 30 days of the denial of his post-sentence motion.  **See** Response to Rule to Show Cause, 4/16/20, at 3-4 (citing **Commonwealth v. Lahoud**, 488 A.2d 307 (Pa. Super. 1985)).  This court discharged the rule to show cause and referred the issue to the merits panel. Our review of the record reveals that Brown was sentenced on December 21, 2018, and filed a post-sentence motion on December 28, 2018.  The motion was denied on February 8, 2019, and Brown filed his notice of appeal on February 12, 2019.  Because Brown perfected his appeal by timely filing his notice of appeal, we conclude that the defect in the notice was harmless and

(trial court) following his convictions for aggravated assault, robbery, theft by unlawful taking, receiving stolen property, possession of an instrument of crime, terroristic threats, simple assault and recklessly endangering another person.[2] Brown raises challenges to the sufficiency and weight of the evidence and the discretionary aspects of his sentence. We affirm.

**I.**

The trial court set forth the relevant facts in this case as follows:

At trial, the victim testified that, on November 7, 2017, he worked for a repossession company and was hooking up a Cadillac to his tow truck on the 6100 block of Hawthorne Street when [Brown] as well as another man approached. Both males were verbally aggressive, and [Brown] said, "Fuck you, fuck your life, I don't care," to the victim. [Brown] and the other individual then left the scene. Consequently, the victim finished securing the Cadillac to his tow truck and drove to the parking lot of a dollar store at 6100 Frankford Avenue where he continued to properly secure the Cadillac.

While the victim was placing straps onto the tires of the Cadillac, [Brown] drove a silver pickup truck into the parking lot. As the victim stood near the rear of the driver's side of his tow truck, [Brown] drove directly towards him and collided with the rear of the tow truck. To avoid being struck by [Brown's] vehicle, the victim jumped on top of his tow truck. Then [Brown] exited his vehicle while holding a silver baseball bat and said, "What now, motherfucker." The victim ran away, because he felt threatened. [Brown] chased the victim approximately twenty feet, then

decline to quash. ***Commonwealth v. Kornicki***, 515 A.2d 925, 927 n.1 (Pa. Super. 1986). We have corrected the caption accordingly. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*).

[2] 18 Pa.C.S. §§ 2702(a)(4), 3701(a)(1)(iv), 3921(a), 3925(a), 907(a), 2706(a)(1), 2701(a), 2705.

returned to the tow truck. The victim watched [Brown] reach into the tow truck, shut it off, and abscond with the victim's keys. The victim called 9-1-1, providing a description of [Brown] to the officers, who responded to the scene. A short time later, the victim identified [Brown].

During [Brown's] trial, the Commonwealth played a video of the incident, which was moved into evidence as Commonwealth Exhibit Twelve. Also, the Commonwealth played recorded jail phone calls, which were dated November 19, 2017, and November 20, 2017. During one of the calls, which were collectively marked as Commonwealth Exhibit Thirteen, [Brown] admitted, "I took his keys[.]"

Trial Court Opinion, 1/2/20, at 3-4 (citations omitted).

Brown proceeded to a bench trial on October 15, 2018, and was found guilty of the above-mentioned charges. The next day, Brown filed a motion in arrest of judgment challenging the sufficiency of the evidence to support the convictions. After hearing arguments, the trial court denied the motion.

Prior to sentencing, Brown submitted several character letters from family and friends for the court's review.[3] Additionally, Brown's son testified that his father had always been hardworking and cared for his family and that he and Brown had started a snow plowing business together shortly before the events in this case. He opined that his father was a kind and caring person who had lost his temper and made a mistake. Brown's fiancée testified similarly, telling the court that Brown had been very supportive and caring

_____

[3] These letters were not made part of the certified record on appeal.

- 3 -

towards her and her children. She also believed that the incident was a mistake and not within Brown's usual character.

Brown spoke on his own behalf and said that he regretted his actions in this case but that he did not intend to scare the victim or put him in danger. He said that he did not usually "let [his] emotions get the best of [him]" and that during his pretrial incarceration, he had missed his daughter's wedding and the birth of his grandchild. Notes of Testimony, 12/21/18, at 28. He acknowledged that he had a lengthy criminal record and had been sentenced to state prison in the past, but emphasized that it had been seven years since he was released and he had not otherwise reoffended in that time.

Following the reception of the evidence, the trial court sentenced Brown to 4 to 8 years' incarceration on the counts of aggravated assault and robbery to be served concurrently with no further penalty on the remaining charges. As Brown was a repeat felony offender (RFEL), the sentence was in the standard range of the sentencing guidelines. Brown timely filed a post-sentence motion. The trial court denied the motion and Brown timely appealed. Brown and the trial court have complied with Pa.R.A.P. 1925.

## II.

Brown first challenges the sufficiency of the evidence to support his convictions for aggravated assault and robbery.[4] He argues that the

---

[4] Our standard of review is well-settled:

Commonwealth failed to prove that he had the specific intent to cause bodily injury with a deadly weapon as required for the aggravated assault conviction. He contends that the trial court's factual finding that Brown drove his truck directly at the victim is not supported by the video of the incident and argues that "[t]he fact that [Brown's] vehicle traveled in the vicinity where the [victim] is standing is insufficient, without more, to support a finding that he acted with the specific intent to inflict bodily injury with his vehicle." Brown's Brief at 14. Similarly, in challenging his conviction for robbery, Brown contends that the evidence was insufficient to establish that he intended to

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Lopez***, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

place the victim in fear of immediate bodily injury. He argues that the victim was not near his truck when Brown took the keys and was a "mere observer" of a theft. Brown's Brief at 18.

A person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4). A person is guilty of robbery if, in the course of committing theft, he "inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury." 18 Pa.C.S. § 3701(a)(1)(iv). The Commonwealth may rely on circumstantial evidence to prove intent or any other element of an offense. *See Commonwealth v. Thomas*, 561 A.2d 699, 704 (Pa. 1989). "[T]he law permits the fact finder to infer that one intends the natural and probable consequences of his acts." *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008) (internal quotations omitted).

Here, the trial court credited the victim's testimony. Brown first confronted the victim while he was attempting to repossess a vehicle. While Brown did not own the vehicle in question, he nonetheless angrily approached the victim and started yelling at him. The victim left the scene without fully securing the car to the tow truck and parked in a nearby parking lot to correctly secure the vehicle. While the victim was standing near the driver's side of the tow truck, Brown entered the parking lot and drove his truck at the victim, hitting the rear bumper of the tow truck. The victim testified that he

had to jump on top of his truck to avoid being hit by Brown's truck. Brown then exited his truck holding a baseball bat and chased the victim for approximately 20 feet. After chasing the victim away, Brown returned to the tow truck, removed the victim's keys and left the scene.

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence for the trial court to conclude that Brown intended to inflict bodily injury when he attempted to hit the victim with his truck. Brown initiated a confrontation with the victim, a stranger, and continued the confrontation after the victim attempted to leave the scene. The victim had to climb on top of his truck to avoid Brown's attack. The trial court was entitled to conclude from this circumstantial evidence that Brown intended to inflict bodily injury by driving his vehicle at the victim.[5]

This evidence is also sufficient to support Brown's conviction for robbery, and Brown's argument that the victim was a "mere observer" of a theft is meritless. The victim's testimony and the video of the incident establish that the events in the parking lot took place in quick succession, with Brown driving

---

[5] Brown cites **Commonwealth v. Alford**, 880 A.2d 666, 671 (Pa. Super. 2005), for the proposition that merely pointing a gun at an individual is insufficient to support a conviction for aggravated assault and argues that driving his vehicle at the victim was akin to pointing a gun. However, Brown did not merely sit in his vehicle while facing the victim; rather, he drove his vehicle directly at the victim such that he had to jump on top of his truck to avoid being hit. These actions are more like firing a gun at a victim than merely pointing it, and **Alford** is distinguishable.

his vehicle at the victim's truck, immediately exiting with a baseball bat to chase the victim, and then returning to the tow truck to steal the keys. Brown's actions, viewed in the totality, evidenced a clear intent to threaten the victim with bodily injury or inflict fear of bodily injury in the course of the theft. Regardless of where the victim was standing when the keys were stolen, Brown facilitated the theft by attempting to assault the victim twice: first with the car and then with the baseball bat. *See Commonwealth v. Lloyd*, 151 A.3d 662, 665 (Pa. Super. 2016) (citation omitted) (stating that a robbery may occur when an item is taken from "the presence of another" as "common sense dictates that a person need not be in actual physical possession of property to have it taken from his person"). These facts are sufficient to support the trial court's conclusion that Brown intended to place the victim in fear of bodily injury during the course of the theft. Brown's challenges to the sufficiency of the evidence are meritless.

## III.

Next, Brown contends that his convictions were against the weight of the evidence and that the trial court abused its discretion by denying his motion for a new trial.[6] While his argument on appeal is underdeveloped,

---

[6] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). An abuse of discretion occurs "where the course pursued represents

Brown primarily contends that the video of the incident contradicts the trial court's factual findings. Brown's Brief at 19.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." ***Commonwealth v. Sullivan***, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). A new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Olsen***, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted). In evaluating the verdict, this court does not independently assess the credibility of the evidence, as this is purely within the province of the fact-finder. ***Olsen***, ***supra***.

After review of the transcripts and the video of the incident, we discern no abuse of discretion in the trial court's denial of Brown's motion for a new trial. The trial court, sitting as fact-finder, was entitled to credit the victim's testimony describing Brown's attack. No evidence was adduced at trial to cast

_____

not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." ***Id.*** (citation omitted). A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." ***Id.*** (citation omitted).

doubt on this version of events or to render the trial court's credibility determinations unsupported by the record. While Brown argues that the trial court's factual findings are not supported by the video,[7] our review of the video and the victim's testimony reveals that the two are consistent in all material respects. Just as the victim testified, the video depicts Brown's truck entering the parking lot at a high rate of speed and stopped abruptly near the tow truck, such that the tow truck and vehicle attached to the back vibrate with the collision. The victim is seen jumping over the hook mechanism on the back of the tow truck to move away from Brown's truck, and Brown then exits his truck holding a bat and walks to the front of the tow truck, appearing to gesture and yell at the victim in the distance. There are no inconsistencies between the victim's testimony, the video and the trial court's factual findings, and this court may not reweigh the evidence properly admitted and considered by the trial court. As the trial court's reasoning was well-supported by the evidence, this claim is meritless.

_____

[7] Brown faults the trial court for finding that "the only reason the [victim] was not hit is because he was standing between the two vehicles." Brown's Brief at 19. Our review of the video reveals that the victim was standing at the bumper of the tow truck, between the tow truck and the Cadillac the victim was repossessing.

**IV.**

Finally, Brown challenges the discretionary aspects of his sentence of 4 to 8 years of incarceration.[8] "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). An appellant must preserve his claims at the time of sentencing or in a post-sentence motion, file a timely notice of appeal, include a statement of reasons for allowance of appeal pursuant to Rule of Appellate Procedure 2119(f) in his brief, and raise a substantial question for review. ***Id***. Brown fulfilled the first three requirements by filing a timely post-sentence motion seeking modification of his sentence, a timely notice of appeal, and including a 2119(f) statement as an appendix to his brief.

We now turn to whether Brown has raised a substantial question for review. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Clarke***, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted). While his Pa.R.A.P. 2119(f) statement is sparse, Brown contends that the trial court abused its discretion by imposing a sentence

---

[8] We review this claim for an abuse of discretion. ***Commonwealth v. Zeigler***, 112 A.3d 656, 661 (Pa. Super. 2015).

without considering the required factors under 42 Pa.C.S. § 9721(b). We have previously held that such a claim presents a substantial question for our review. **Commonwealth v. Riggs**, 63 A.3d 780, 786 (Pa. Super. 2012).

Moving on to the merits of Brown's claim, the standard range of the sentencing guidelines for aggravated assault is a minimum of 40 to 52 months of incarceration, and the standard range for robbery is a minimum of 35 to 45 months of incarceration. Brown was sentenced within the standard range of the guidelines to 4 to 8 years' incarceration at each count of aggravated assault and robbery, imposed concurrently. For all additional charges, he was sentenced to no further penalty.

When imposing a sentence, a trial court must ensure that the sentence is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). When reviewing the discretionary aspects of a sentence that falls within the sentencing guidelines, we must affirm unless "application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). Finally, "[w]here the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as

- 12 -

appropriate under the Sentencing Code." ***Commonwealth v. Hill***, 210 A.3d 1104, 1117 (Pa. Super. 2019) (internal quotations & citation omitted).

The record reveals that the trial court gave due consideration to all required factors in crafting its sentence. The trial court began by considering the facts underlying the offenses and concluded that Brown had committed an "act of terror" when he drove his car at the victim. Notes of Testimony, 12/21/18, at 29. The trial court considered Brown's testimony that he did not intend to scare the victim, but found it incredible in light of the video of the incident. It recognized that vehicles can be used as a deadly weapon and are inherently dangerous, concluding that Brown knew he could cause substantial harm to the victim by driving his car at him.

The trial court also considered Brown's personal characteristics, including that he was 45 years old, had a substantial criminal record and had served time in state prison before he committed the crimes in question. It acknowledged that Brown's family cared for him and supported him, but found that based on his history, Brown was aware of the potential consequences of his actions. The trial court did credit Brown for "spar[ing] the Commonwealth and the court system the expense of a jury trial," but emphasized the seriousness of the offenses, as the aggravated assault and robbery charges were both graded as second-degree felonies. ***Id.*** at 32. Finally, the trial court ordered and reviewed a PSI before imposing the sentence so we presume that it was aware of and weighed all relevant aggravating and mitigating factors.

***Hill***, ***supra.*** Under all of these circumstances, the trial court determined that a standard-range sentence was appropriate. We conclude that the trial court weighed and considered all required factors and did not abuse its discretion in sentencing Brown to 4 to 8 years of incarceration.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/20