J-S27007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEREK PRINCE | : | |
| | : | |
| Appellant | : | No. 2279 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 29, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002465-2018

BEFORE:   SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 31, 2020**

Appellant, Derek Prince, appeals from the judgment of sentence entered

on July 29, 2019, in the Court of Common Pleas of Delaware County.  We

affirm.

The trial court summarized the factual and procedural history of this

case as follows:

> On October 15, 2017, at approximately 7:00 a.m., Officer
> Michael Kester of the Lansdowne Police Department was
> dispatched to 73 E. Stratford Ave, Lansdowne, Delaware County,
> Pennsylvania to respond to a report of an unconscious person in a
> running motor vehicle.  Upon arrival, Officer Kester observed a
> black Mercedes sedan bearing Pennsylvania license plate number
> JVB-8606, stationary and located in the center of Stratford Ave.
> Appellant Derek Prince was in the driver's seat with the engine
> running and the vehicle in a gear marked "drive." [Appellant] was
> unconscious with his foot on the brake pedal.  Sgt. Kevin Kienzle,
> who also responded to assist Officer Kester, entered the vehicle

_____

[*] Former Justice specially assigned to the Superior Court.

through the front passenger door, placed the vehicle in "park" and removed the keys from the ignition. To awaken Appellant Prince, Officer Kester made physical contact by executing a "sternum rub."[1]

> [1] An ambulance responded to the scene and evaluated Appellant Prince but medical treatment was refused.

Appellant Prince had an odor of alcoholic beverage on his breath[] and person. An open bottle of Ciroc peach flavored vodka was observed on the passenger side floor of the vehicle and an odor of burnt marijuana emanated from the vehicle. Appellant Prince had difficulty exiting the vehicle and was forced to keep his hands on the door and roof to prevent losing his balance. Appellant Prince exhibited watery, bloodshot eyes and slurred speech and refused to perform field sobriety tests which he declined on two occasions. A portable breath test was administered to Appellant Prince and registered above the legal limit. An inventory search of the vehicle, revealed three burnt marijuana cigarettes in the vehicle's ash tray and a small amount of leaf marijuana in the vehicle cup holder. Appellant Prince was taken into police custody and a subsequent review of his PennDOT record revealed Appellant Prince's operating privileges were suspended.

Appellant Prince was read the implied consent warning DL-26, signed the warning form, and provided his consent to have his blood drawn for chemical testing. Appellant Prince was transported to Mercy Fitzgerald Hospital where a sample of his blood was drawn by a registered nurse. The blood sample was collected in two vials and returned to the Lansdowne Police station where it was stored in evidence.

Appellant Prince was subsequently charged with the following offenses: (1) 75 § 3802 §§ A2 - DUI: Gen Imp (BAC .08-.10) 4th Offense & Subsequent, (2) 75 § 3802 §§ D3 DUI: Controlled Substance - Combination Alcohol/Drug - 4th & Subsequent Offense (3) 75 § 3802 §§ D1i - DUI: Controlled Substance - Schedule I - 4th and Subsequent Offense (4) 35 § 780-113 §§ A31 – Possession of Marijuana, (5) 35 § 780-113 §§ A32 - Use/Possession of Drug Paraphernalia,[2] (6) 75 § 1543 §§ B1, Driving License Suspension/Rev. Pursuant to 3802/1547B1, and (7) Driving While BAC .02 or Greater While License Suspension.[3]

[2] Counts (4) 35 § 780-113 §§ A31 - Possession of Marijuana and (5) 35 § 780-113 §§ A32 - Use/Poss of Drug Paraphernalia were withdrawn prior to jury selection.

[3] Counts (6) 75 § 1543 §§ B1, Driving License Suspension/Rev. Pursuant to 3802/1547B1 and (7) Driving While BAC .02 or Greater While License Suspension were summary offenses and not presented to the jury for consideration.

A jury trial commenced in the Court of Common Pleas of Delaware County, Pennsylvania on April 16, 2019 and concluded on April 18, 2019. The jury found Appellant Prince guilty of all prosecuted offenses: (1) 75 § 3802 §§ A2 - DUI: Gen Imp (BAC .08 - .10) 4th Off & Subsequent, (2) 75 § 3802 §§ D3 DUI: Controlled Substance - Combination Alcohol/Drug - 4th & Subsequent Offense (3) 75 § 3802 §§ D1I - DUI: Controlled Substance - Schedule I - 4th and Subsequent Offense. The Court found Appellant Prince guilty on the summary offenses listed at information (6) 75 § 1543 §§ B1, Driving License Suspension/Rev. Pursuant to 3802/1547B1, and (7) Driving While BAC .02 or Greater While License Suspension.

At trial, the following testimony regarding Appellant's blood draw was provided by Sergeant Kevin Kienzle on direct examination by counsel for the Commonwealth:

Q: Okay. When you [Sergeant Kevin Kienzle] get back, did you ask [Appellant] to submit to chemical testing of his blood?

A: Yes, sir, I did.

Q: Okay. And what is your responsibility under the laws of the Commonwealth of Pennsylvania, when you want to request a person submit to chemical testing?

A: I read the DL-26 Implied Consent Form, which [Appellant] had a few questions about which I then gave him the form to -- I said you can read this to yourself and then sign it when you're done and he did sign that form.

- 3 -

Q: But prior to handing it to him, did you read him that form verbatim as it's printed by?

A: Yes, sir.

Q: Okay. If you were to see that form here today, would you recognize it?

A: Yes, sir, I would.

MR. DIROSATO: Your Honor, I'd ask that this be marked for identification purposes as C-6. The record should reflect a copy has been given to Defense Counsel during the course of discovery.

THE COURT: C-6 is a copy.

MR. DIROSATO: Permission to approach, Your Honor.

THE COURT: You have permission.

BY MR. DIROSATO:

Q: Sergeant Kienzle, I'm going to show you what's marked for identification purposes as Commonwealth's Exhibit C-6. Can you take a moment to review that exhibit? Do you recognize Commonwealth's Exhibit C-6, Sergeant Kienzle?

A: Yes, sir.

Q: Can you tell the members of the jury what C-6 is?

A: This is the DL-26(b), commonly called the Implied Consent Form with the instructions that I'm required under the law to read to [Appellant].

Q: And did you read that form verbatim as it's printed by PennDOT that day?

A: Yes, sir.

Q: And after being read that form and you gave [Appellant] an opportunity to read that form on his own as well?

A: Yes, sir.

Q: Did you witness him do that or did you just hand it to him and go about any other business?

A: I don't recall. I handed him the form and the pen, I don't recall how much time passed before he handed it back to me.

Q: Okay. Regardless of whether you watched him, did you give him or did he take the time or did time pass before he handed the form back to you and --

A: Yes, sir.

Q: And after being informed of his implied consent rights, did [Appellant] agree to submit to testing of his blood?

A: Eventually. I seem to recall that he had objections to taking the blood test because I remember saying to him that this -- I actually said the words this isn't a game show, you don't get to make the deal, you either take the test or you don't and he reluctantly agreed to take the test.

Q: But after you informed him of his rights?

A: Yes, sir.

(4/17/19, N.T., pp. 187-190).

The following testimony was provided by Sergeant Kevin Kienzle on cross examination by counsel for [Appellant]:

Q: Okay. And as far as your involvement with this job, it was, I guess, collection of data, the blood, I guess, excuse me, to take him to the hospital and collect blood?

A:  My involvement?

Q:  Yes.

A:  I was the supervisor.  I supervised the other officer and assisted him.  And that's correct that I did take [Appellant] for blood, yes, sir.

Q:  Okay.  And you mentioned on direct examination that you agreed to take him home.

A:  Yes, sir.

Q:  Was that in agreement with him complying with the blood sample?

A:  Yes, sir.

Q:  Okay.  So if he takes a blood sample then you'll drop him home and release him?

A:  Yes, sir.

Q:  Okay.  And when you referenced also on direct that, you know, this isn't a game show, you don't get to make a deal, what were you referencing with that?

A:  [Appellant] had, I don't recall specifically what they were, but he was adding conditions to whether or not he would take the blood test.

Q:  Okay.

A:  And I just -- I specifically remember using those words that this isn't a game show.

Q:  But the ultimate agreement from you was if you submit to the blood test, then I'll release you and take you home.

A:  And he would be charged on something called a 20 day summons versus being brought before the Judge on a criminal complaint at that moment, yes, sir.

(4/17/19, N.T., pp. 210-212).

Sentencing was held on July 29, 2019[,] and [Appellant] was sentenced to fifteen months to sixty months. On August 7, 2019, a Notice of Appeal was docketed[1] and by Order dated August 19, 2019, Appellant Prince was directed to file a Concise Statement of Matters Complained of on Appeal. Appellant Prince's Concise Statement of Matters Complained of on Appeal was filed on September 10, 2019.

Trial Court Opinion, 10/23/19, at 1-9 (some internal citations omitted).

Appellant presents the following issue for our review:

I.    Did the Commonwealth limit the Appellant's ability to pursue all pretrial avenues of relief by not disclosing information regarding the Lansdowne Police unduly influencing Appellant to consent to a blood test for the purpose of determining whether or not Appellant was under the influence and to what extent?

Appellant's Brief at 6. In support of this claim, Appellant makes the following

argument:

On April 16, 2019[,] a trial commenced and during said trial the [C]ommonwealth called S[e]rgeant Kevin Kienzile to testify and during his testimony he stated in exchange for the Appellant taking the blood test that S[e]rgeant Kienzile would not arrest

_____

[1] In his notice of appeal, Appellant asserts that he is appealing "from the Order of Judgment entered" on August 7, 2019. Notice of Appeal, 8/7/19, at 1. A review of the record reflects that there are no entries on the docket for this date other than the notice of appeal and the motion for bail pending appeal. Appellant was sentenced on July 29, 2019, and Appellant did not file a post-sentence motion. As such, we deem Appellant's notice of appeal properly to be from his judgment of sentence entered on July 29, 2019. Furthermore, the notice of appeal filed on August 7, 2019, from the judgment of sentence entered on July 29, 2019, was timely. "Because the appeal is otherwise proper, we will treat this defect as harmless and proceed to consider the merits as if the notice of appeal had correctly referred to the judgment of sentence." *Commonwealth v. Lahoud*, 488 A.2d 307, 309 (Pa. Super. 1985) (citing Pa.R.A.P. 105(a)).

[Appellant] that evening and that S[e]rgeant Kienzle would take him home. This agreement to not arrest the Appellant deprived him of being able to knowingly and intelligently agree to have his blood tested. The agreement coerced Appellant into not using the rights afforded to [Appellant] by both the PA and US Constitution.

* * *

The presentation of statements between the arresting officer and [Appellant] should have been disclosed upon discovery request. With this information, [Appellant] would have had the opportunity to conduct trial in a different manner. Due to this oversight, [Appellant] was prejudiced and is entitled to a new trial, as precedent dictates.

*Id.* at 8. Appellant further asserts that "the defense had only become aware of the officer's coercion of [Appellant's] blood withdraw during trial. . . . [Appellant] had no opportunity to raise claims in relation to **Brady**."[2] **Id.** at 10. Appellant further contends that

the prosecution here was specifically privy to the coercive nature of the conversation between arresting officer and [Appellant]. Had the information been disclosed upon original discovery request, the defense would have fully utilized all avenues, namely filing a motion to suppress the blood results. Without complete disclosure of all exculpatory evidence, Appellant and his attorney did not have the opportunity to fully conduct trial.

*Id.* at 11.

We first note that Appellant raised this issue for the first time on appeal. "It is axiomatic that claims not raised in the trial court may not be raised for the first time on appeal." **Commonwealth v. Johnson**, 33 A.3d 122, 126 (Pa. Super. 2011). At trial, Appellant's counsel did not object to the testimony

_____

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

given by Sergeant Kienzle on direct examination. N.T., 4/17/19, at 169-202. Morever, Appellant's counsel cross-examined Sergeant Kienzle about the discussion regarding the blood draw, but did not raise the alleged **Brady** violation at any point during the trial. **Id.** at 202-212. Appellant did not raise the potential **Brady** issue during the July 29, 2019 sentencing hearing, N.T., 7/29/19, at 3-30, or in a post-sentence motion. Indeed, Appellant does not identify any place in the record where he raised this issue before the trial court. **See** Pa.R.A.P. 302(a) (stating that issues not previously raised in a lower court are waived). Although Appellant raised the **Brady** issue in his Pa.R.A.P. 1925(b) statement, we have stated that "a party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." **Commonwealth v. Monjaras–Amaya**, 163 A.3d 466, 469 (Pa. Super. 2017). Accordingly, this claim is waived.

Moreover, even if the issue was not waived, Appellant would be entitled to no relief on his claim. As our Supreme Court stated: "To establish a **Brady** violation, an appellant must prove three elements: [1] the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued." **Commonwealth v. Paddy**, 15 A.3d 431, 450 (Pa. 2011). Our Supreme Court further explained:

> The evidence alleged to have been withheld by the prosecution must have been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the

government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Brady* does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses. Similarly, *Brady* does not require the prosecution to disclose every fruitless lead considered during the investigation of a crime. *Brady* sets forth a limited duty, not a general rule of discovery for criminal cases. The burden rests with Appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. **There is no *Brady* violation when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from non-governmental sources.**

*Paddy*, 15 A.3d at 450-451 (emphasis added) (internal citation and quotation marks omitted).

Here, we cannot agree that Appellant established the three elements necessary for a *Brady* violation. We first note that there was no evidence suppressed by the prosecution. The conversations between Appellant and the arresting officer were known to Appellant. Appellant was a participant in the conversation and was, or should have been aware, of the conversation that was occurring. Notably, Appellant does not assert that he was unable to comprehend or remember the conversation with the arresting officer. Thus, there is no evidence that the substance of these conversations was kept from Appellant. As our Supreme Court in *Paddy* explained: "There is no *Brady* violation when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to

the defense from non-governmental sources." ***Paddy***, 15 A.3d at 450-451. Furthermore, Appellant has failed to show that the evidence was favorable because it is exculpatory or impeaches, and that prejudice ensued. Accordingly, if Appellant's claim had not been waived and we were to review it on the merits, we would find it to be without merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/20